(Slip Opinion)          OCTOBER TERM, 2009          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* O'BRIEN ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 08–1569.   Argued February 23, 2010—Decided May 24, 2010

Respondents O'Brien and Burgess each carried a firearm during an attempted robbery.  Count three of their indictment charged them with using a firearm in furtherance of a crime of violence, which carries a mandatory minimum 5-year prison term.   18 U. S. C. §924(c)(1)(A)(i).  Count four alleged use of a machinegun (here, a pistol that authorities believed operated as a fully automatic firearm) in furtherance of that crime, which carries a 30-year mandatory minimum term.  §924(c)(1)(B)(ii).  The Government moved to dismiss the fourth count on the basis that it could not establish the count beyond a reasonable doubt, but it maintained that §924(c)(1)(B)(ii)'s machinegun provision was a sentencing enhancement to be determined by the District Court upon a conviction on count three.  The court dismissed count four and rejected the Government's sentencing-enhancement position.  Respondents then pleaded guilty to the remaining counts.  The court sentenced O'Brien to a 102-month term and Burgess to an 84-month term for their §924(c) convictions.  In affirming the District Court's §924(c)(1)(B)(ii) ruling, the First Circuit looked primarily to *Castillo* v. *United States*, 530 U. S. 120, which held that the machinegun provision in an earlier version of §924(c) constituted an element of an offense, not a sentencing factor.  The court found that *Castillo* was "close to binding," absent clearer or more dramatic changes than those made by Congress' 1998 amendment of §924(c) or a clearer legislative history.

*Held:* The fact that a firearm was a machinegun is an element to be proved to the jury beyond a reasonable doubt, not a sentencing factor to be proved to the judge at sentencing.  Pp. 5–16.

(a) Generally, a fact that "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" is an element of a

crime, *Apprendi* v. *New Jersey*, 530 U. S. 466, 490, to be charged in an indictment and proved to a jury beyond a reasonable doubt, *Hamling* v. *United States*, 418 U. S. 87, 117, rather than proved to a judge at sentencing by a preponderance of the evidence, *McMillan* v. *Pennsylvania*, 477 U. S. 79, 91−92. Subject to this constitutional constraint, Congress determines whether a factor is an element or a sentencing factor. When Congress is not explicit, courts look to a statute's provisions and framework for guidance. Analysis of the current machinegun provision begins with *Castillo,* where the Court found the bare language of §924's prior version "neutral," 530 U. S., at 124, but ruled that four factors—(1) language and structure, (2) tradition, (3) risk of unfairness, and (4) severity of the sentence—favored treating the machinegun provision as an element of an offense, *id.*, at 124−131; while a fifth factor—legislative history—did not favor either side, *ibid.* Pp. 5–6.

   (b) As relevant here, the 1998 amendment divided what was once a lengthy principal sentence into separate subparagraphs. Thus, with regard to the first *Castillo* factor, the Court's observation that "Congress placed the element 'uses or carries a firearm' and the word 'machinegun' in a single sentence, not broken up with dashes or separated into subsections," 530 U. S*.,* at 124−125, no longer holds true. However, the amendment did not affect the second through fifth *Castillo* factors. Each of them, except for legislative history (which remains relatively silent), continues to favor treating the machinegun provision as an element. The amendment's effect on the language and structure factor requires closer examination. Pp. 6–12.

   (c) Given the Court's determination in *Castillo* that the machinegun provision in §924's prior version is an element, a substantive change in the statute should not be inferred "[a]bsent a clear indication from Congress of a change in policy," *Grogan* v. *Garner*, 498 U. S. 279, 290. Nothing in the 1998 amendment indicates such a change. There are three principal differences between the previous and current §924(c). The first, a substantive change, shifts what were once mandatory 5-year and 30-year sentences to mandatory minimum sentences. The second, also substantive—made in direct response to the holding in *Bailey* v. *United States*, 516 U. S. 137, that "uses or carries" in §924's preamendment version connotes "more than mere possession," *id.*, at 143—adds "possesses" to the "uses or carries" language in §924(c)'s principal paragraph and provides sentencing enhancements for brandishing or discharging the firearm, §§924(c)(1)(A)(ii) and (iii), which do state sentencing factors, *Harris* v. *United States*, 536 U. S. 545, 552−556. Neither of these substantive changes suggests that Congress meant to transform the machinegun provision from an element into a sentencing factor. The third differ-

ence is the machinegun provision's relocation from the principal paragraph that unmistakably lists offense elements to a separate subsection, §924(c)(1)(B), but this structural or stylistic change provides no "clear indication" that Congress meant to alter its treatment of machineguns as an offense element. A more logical explanation is that the restructuring was intended to break up a lengthy principal paragraph, which exceeded 250 words, into a more readable statute, which is in step with current legislative drafting guidelines. While this Court has recognized that placing factors in separate subsections is one way Congress might signal that it is treating them as sentencing factors rather than elements, *Castillo*, *supra,* at 124−125, it has rejected the view that such a structural consideration predominates even when other factors point in the other direction, *Harris*, *supra*, at 553. The current structure of §924(c) is more favorable to treating the machinegun provision as a sentencing factor than was true in *Castillo*, particularly because the machinegun provision is now positioned between the sentencing factors provided in (A)(ii) and (iii) and those in (C)(i) and (ii). This structural point is overcome by the substantial weight of the other *Castillo* factors and the principle that Congress would not enact so significant a change without a clear indication of its purpose to do so. Pp. 12–16.

542 F. 3d 921, affirmed.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SCALIA, GINSBURG, BREYER, ALITO, and SOTOMAYOR, JJ., joined. STEVENS, J., filed a concurring opinion. THOMAS, J., filed an opinion concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

─────────────

No. 08–1569

─────────────

## UNITED STATES, PETITIONER *v.* MARTIN O'BRIEN AND ARTHUR BURGESS

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[May 24, 2010]

JUSTICE KENNEDY delivered the opinion of the Court.

The Court must interpret, once again, §924(c) of Title 18 of the United States Code. This provision prohibits the use or carrying of a firearm in relation to a crime of violence or drug trafficking crime, or the possession of a firearm in furtherance of such crimes. §924(c)(1)(A). A violation of the statute carries a mandatory minimum term of five years' imprisonment, §924(c)(1)(A)(i); but if the firearm is a machinegun, the statute requires a 30-year mandatory minimum sentence, §924(c)(1)(B)(ii). Whether a firearm was used, carried, or possessed is, as all concede, an element of the offense. At issue here is whether the fact that the firearm was a machinegun is an element to be proved to the jury beyond a reasonable doubt or a sentencing factor to be proved to the judge at sentencing.

In an earlier case the Court determined that an analogous machinegun provision in a previous version of §924 constituted an element of an offense to be proved to the jury. *Castillo* v. *United States*, 530 U. S. 120 (2000). The *Castillo* decision, however, addressed the statute as it

existed before congressional amendments made in 1998. And in a case after *Castillo*, the brandishing provision in the post-1998 version of §924 was held to provide a sentencing factor, not an element of the offense. *Harris* v. *United States*, 536 U. S. 545 (2002). In light of the 1998 amendments and the *Harris* decision, the question of how to interpret §924's machinegun provision is considered once more in the instant case.

I

On June 16, 2005, respondents Martin O'Brien and Arthur Burgess attempted to rob an armored car making a scheduled delivery of cash to a bank. Along with a third collaborator, respondents hid in a minivan and waited for the armored car to make its stop. Each of the men carried a firearm. Containing nearly $2 million and attended by two guards, the armored car arrived. A guard began to unload boxes of coins. The three men came out of the van and, while one of them brandished his weapon, they ordered the guards to get on the ground. One guard did so, but the other ran to a nearby restaurant. The respondents abandoned the robbery and fled without taking any money. No shots were fired, and no one was injured.

Authorities apprehended respondents and recovered the three firearms used during the attempted robbery. The firearms were a semiautomatic Sig-Sauer pistol, an AK−47 semiautomatic rifle, and a Cobray pistol. The Cobray pistol had been manufactured as, and had the external appearance of, a semiautomatic firearm. According to the Federal Bureau of Investigation, though, it operated as a fully automatic weapon, apparently due to some alteration of its original firing mechanism. Respondents dispute whether the Cobray in fact did operate as a fully automatic weapon.

Respondents were indicted on multiple counts. Relevant here are counts three and four, both of which charged

offenses under §924(c). Count three charged respondents with using a firearm in furtherance of a crime of violence, which carries a statutory minimum of five years' imprisonment. Count four charged respondents in more specific terms, alleging use of a machinegun (the Cobray) in furtherance of a crime of violence, as proscribed by §§924(c)(1)(A) and (B)(ii). The latter provision mandates a minimum sentence of 30 years' imprisonment.

The Government moved to dismiss count four on the basis that it would be unable to establish the count beyond a reasonable doubt. (The issues in the present case do not require the Court to consider any contention that a defendant who uses, carries, or possesses a firearm must be aware of the weapon's characteristics. This opinion expresses no views on the point.)

The Government then maintained that the machinegun provision in §924(c)(1)(B)(ii) was a sentencing factor, so that, if respondents were convicted of carrying a firearm under count three, the court could determine at sentencing that the particular firearm was a machinegun, thus activating the 30-year mandatory minimum. The District Court dismissed count four, as the Government requested, but rejected the Government's position that the machinegun provision was a sentencing enhancement to be determined by the court at sentencing once there was a conviction on count three. It ruled that the machinegun provision states an element of a crime. Thus, to invoke the 30-year minimum sentence, the Government was required to charge in the indictment, and then prove to the jury, that the Cobray was a machinegun.

At this point, after the District Court foreclosed the possibility of respondents' facing a 30-year minimum, respondents pleaded guilty to the remaining counts, including count three. The District Court sentenced O'Brien to a 102-month term for his §924(c) conviction, to run consecutively with his sentence on two other counts.

It sentenced Burgess to an 84-month term for his §924(c) conviction, also to run consecutively to his sentence on the other charges. The Government appealed the District Court's ruling that the §924 machinegun provision constitutes an element of an offense instead of a sentencing factor.

The United States Court of Appeals for the First Circuit affirmed. It looked primarily to *Castillo*, 530 U. S. 120, which held that the machinegun provision in an earlier version of §924(c) constituted an element of an offense, not a sentencing factor. The court noted that the statute under consideration in *Castillo* had been revised by Congress, "break[ing] what was a single run-on sentence into subparagraphs," and it acknowledged that the earlier repealed version of the statute was "slightly more favorable to the [respondents] than the current version[,] but not markedly so." 542 F. 3d 921, 925 (2008). It found "no evidence that the breaking up of the sentence into the present subdivisions or recasting of language was anything more than a current trend—probably for ease of reading—to convert lengthy sentences in criminal statutes into subsections in the fashion of the tax code." *Id.,* at 926. The court concluded: "Absent a clearer or more dramatic change in language or legislative history expressing a specific intent to assign judge or jury functions, we think that *Castillo* is close to binding," and any reconsideration of the issue should be left to this Court. *Ibid.;* see also *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions").

We granted certiorari. 557 U. S. ___ (2009).

## II

Elements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Hamling* v. *United States*, 418 U. S. 87, 117 (1974); *Jones* v. *United States*, 526 U. S. 227, 232 (1999). Sentencing factors, on the other hand, can be proved to a judge at sentencing by a preponderance of the evidence. See *McMillan* v. *Pennsylvania*, 477 U. S. 79, 91−92 (1986). Though one exception has been established, see *Almendarez-Torres* v. *United States*, 523 U. S. 224, 228 (1998), "'[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Apprendi* v. *New Jersey*, 530 U. S. 466, 490 (2000) (quoting *Jones*, *supra,* at 252−253 (STEVENS, J., concurring)). In other words, while sentencing factors may guide or confine a judge's discretion in sentencing an offender "*within the range* prescribed by statute," *Apprendi, supra,* at 481, judge-found sentencing factors cannot increase the maximum sentence a defendant might otherwise receive based purely on the facts found by the jury.

Subject to this constitutional constraint, whether a given fact is an element of the crime itself or a sentencing factor is a question for Congress. When Congress is not explicit, as is often the case because it seldom directly addresses the distinction between sentencing factors and elements, courts look to the provisions and the framework of the statute to determine whether a fact is an element or a sentencing factor. *Almendarez-Torres, supra,* at 228. In examining whether the machinegun provision in §924 is an element or a sentencing factor, the analysis must begin with this Court's previous examination of the question in *Castillo*.

In *Castillo*, the Court considered a prior version of §924, which provided:

> "(c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. . . ."  18 U. S. C. §924(c)(1) (1988 ed., Supp. V).

In determining whether the machinegun provision in the just-quoted version of §924 constituted an element or a sentencing factor, the Court in *Castillo* observed that the bare statutory language was "neutral."  530 U. S., at 124. It examined five factors directed at determining congressional intent: (1) language and structure, (2) tradition, (3) risk of unfairness, (4) severity of the sentence, and (5) legislative history.  *Id.*, at 124−131.  The Court unanimously concluded that the machinegun provision provided an element of an offense, noting that the first four factors favored treating it as such while legislative history did not significantly favor either side.  *Ibid.*

### III
#### A

Section 924(c) was amended to its current form in 1998. The amendment had been enacted when the Court considered *Castillo*, *supra*, at 125, but the pre-1998 version of the statute was at issue there.  The instant case concerns the post-1998 (and current) version of the statute, which provides:

> "(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during

and in relation to any crime of violence or drug traf-
ficking crime . . . uses or carries a firearm, or who, in
furtherance of any such crime, possesses a firearm,
shall, in addition to the punishment provided for such
crime of violence or drug trafficking crime—
    "(i) be sentenced to a term of imprisonment of not
less than 5 years;
    "(ii) if the firearm is brandished, be sentenced to a
term of imprisonment of not less than 7 years; and
    "(iii) if the firearm is discharged, be sentenced to a
term of imprisonment of not less than 10 years.
    "(B) If the firearm possessed by a person convicted
of a violation of this subsection—
    "(i) is a short-barreled rifle, short-barreled shotgun,
or semiautomatic assault weapon, the person shall be
sentenced to a term of imprisonment of not less than
10 years; or
    "(ii) is a machinegun or a destructive device, or is
equipped with a firearm silencer or firearm muffler,
the person shall be sentenced to a term of imprison-
ment of not less than 30 years." 18 U. S. C. §924(c)(1)
(2006 ed.).

   The 1998 amendment did make substantive changes to
the statute, to be discussed below; but for purposes of the
present case the most apparent effect of the amendment
was to divide what was once a lengthy principal sentence
into separate subparagraphs. This Court's observation in
considering the first *Castillo* factor, that "Congress placed
the element 'uses or carries a firearm' and the word 'ma-
chinegun' in a single sentence, not broken up with dashes
or separated into subsections," 530 U. S*.,* at 124−125, no
longer holds true. Aside from this new structure, however,
the 1998 amendment of §924 did nothing to affect the
second through fifth *Castillo* factors. Each of the factors,
except for legislative history (which, assuming its rele-

vance, remains relatively silent), continues to favor the conclusion that the machinegun provision is an element of an offense.

Legal tradition and past congressional practice are the second *Castillo* factor. The factor is to be consulted when, as here, a statute's text is unclear as to whether certain facts constitute elements or sentencing factors. Sentencing factors traditionally involve characteristics of the offender—such as recidivism, cooperation with law enforcement, or acceptance of responsibility. *Id.,* at 126. Characteristics of the offense itself are traditionally treated as elements, and the use of a machinegun under §924(c) lies "closest to the heart of the crime at issue." *Id.,* at 127. This is no less true today than it was 10 years ago in *Castillo.* Unsurprisingly, firearm type is treated as an element in a number of statutes, as "numerous gun crimes make substantive distinctions between weapons such as pistols and machineguns." *Ibid.;* see, *e.g.,* 18 U. S. C. §§922(a)(4), 922(b)(4), and 922(*o*)(1).

The Government counters that this tradition or pattern has evolved since the version of §924(c) under review in *Castillo* was enacted. The Government contends that the Federal Sentencing Guidelines altered the tradition by treating the possession of a firearm as a sentencing factor. Brief for United States 23 (citing United States Sentencing Commission, Guidelines Manual §2K2.1(a)(5) (Nov. 1998) (raising base offense level "if the offense involved a firearm")).

The argument is not persuasive. The Sentencing Reform Act of 1984, 98 Stat. 1987, establishing the Federal Sentencing Guidelines, was enacted four years before the version of §924 under review in *Castillo,* see Anti-Drug Abuse Act of 1988, §6460, 102 Stat. 4373. While the resulting Guidelines were not effective until 1987, this was still before the 1988 enactment of the statute at issue in *Castillo,* and 13 years before this Court's conclusion in

*Castillo* that firearm type is traditionally treated as an offense element. The Government cannot claim the benefit of any shift in how the law traditionally treats firearm type from the Guidelines, for that supposed shift would have occurred before the 1988 version of §924 was enacted. The Guidelines were explicitly taken into account when this Court analyzed the traditions in *Castillo*. 530 U. S., at 126 (discussing Federal Sentencing Guidelines in determining what traditionally qualifies as a sentencing factor).

The third *Castillo* factor, potential unfairness, was unchanged by the restructuring of §924. The Court explained in *Castillo* that treating the machinegun provision as a sentencing factor "might unnecessarily produce a conflict between the judge and the jury" because "a jury may well have to decide which of several weapons" a defendant used. *Id.*, at 128. The concern was that the judge may not know which weapon the jurors determined a defendant used, and "a judge's later, sentencing-related decision that the defendant used the machinegun, rather than, say, the pistol, might conflict with the jury's belief that he actively used the pistol." *Ibid.* This same concern arises under the current version of §924, where jurors might have to determine which among several weapons a defendant used, carried, or possessed in furtherance of a crime.

The Government's response, that permitting a judge to make this finding would "streamlin[e] guilt-stage proceedings, without interfering with the accuracy of fact-finding," Brief for United States 33, is unconvincing. It does not address the particular unfairness concern expressed in *Castillo*, which was not alleviated by the restructuring of §924. And the Government does not suggest that it would be subjected to any unfairness if the machinegun provision continues to be treated as an element.

The fourth *Castillo* factor, the severity of the sentence

accompanying a finding that a defendant carried a machinegun under §924, was also unaffected by the statute's restructuring. A finding that a defendant carried a machinegun under §924, in contrast to some less dangerous firearm, vaults a defendant's mandatory minimum sentence from 5 to 30 years, *Castillo, supra,* at 131, or from 7 to 30 years if, as in this case, the firearm was brandished, §924(c)(1)(A)(ii). This is not akin to the "incremental changes in the minimum" that one would "expect to see in provisions meant to identify matters for the sentencing judge's consideration," *Harris*, 536 U. S., at 554 (from 5 years to 7 years); it is a drastic, sixfold increase that strongly suggests a separate substantive crime.

There is one substantive difference between the old and new versions of §924 that might bear on this fourth factor. The previous version of §924 provided mandatory sentences: 5 years for using or carrying a firearm and 30 years if the firearm is a machinegun, for example. See §924(c)(1) (1988 ed., Supp. V). The current statute provides only mandatory minimums: not less than 5 years for using or possessing a firearm; not less than 7 for brandishing it; and not less than 30 if the firearm is a machinegun. §§924(c)(1)(A)(i), (A)(ii), (B)(ii). The Government argues that this difference is critical because a 30-year sentence is conceivable under the statute even without a finding that the particular weapon is a machinegun. Brief for United States 25.

This is a distinction in theory, perhaps, but not in practice. Neither the Government nor any party or *amicus* has identified a single defendant whose conviction under §924 for possessing or brandishing a nonspecific firearm led to a sentence approaching the 30-year sentence that is required when the firearm is a machinegun. Respondents advise, without refutation, that most courts impose the mandatory minimum of 7 years' imprisonment for brandishing a nonspecific weapon and the longest sentence

that has come to the litigants' or the Court's attention is 14 years. Brief for Respondent O'Brien 46, 48 (citing *United States* v. *Batts*, 317 Fed. Appx. 329 (CA4 2009) *(per curiam)*); see also *Harris*, *supra*, at 578 (THOMAS, J., dissenting). Indeed, in the instant case, Burgess received the statutory minimum 7-year sentence, and O'Brien received only 18 months more than that. Once the machinegun enhancement was off the table, the Government itself did not seek anything approaching 30-year terms, instead requesting 12-year terms for each respondent.

The immense danger posed by machineguns, the moral depravity in choosing the weapon, and the substantial increase in the minimum sentence provided by the statute support the conclusion that this prohibition is an element of the crime, not a sentencing factor. It is not likely that Congress intended to remove the indictment and jury trial protections when it provided for such an extreme sentencing increase. See *Jones,* 526 U. S., at 233 ("It is at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit"). Perhaps Congress was not concerned with parsing the distinction between elements and sentencing factors, a matter more often discussed by the courts when discussing the proper allocation of functions between judge and jury. Instead, it likely was more focused on deterring the crime by creating the mandatory minimum sentences. But the severity of the increase in this case counsels in favor of finding that the prohibition is an element, at least absent some clear congressional indication to the contrary.

The fifth factor considered in *Castillo* was legislative history, and the Court there found it to be of little help. 530 U. S., at 130 ("Insofar as this history may be relevant, however, it does not significantly help the Government").

The 1998 amendment has its own legislative record, discussed below, but the parties accurately observe that it is silent as to congressional consideration of the distinction between elements and sentencing factors. Brief for United States 29; Brief for Respondent O'Brien 28–29. This silence is not neutral, however, because as explained below, it tends to counsel against finding that Congress made a substantive change to this statutory provision.

Four of the five factors the Court relied upon in *Castillo* point in the same direction they did 10 years ago. How the 1998 amendment affects the remaining factor—the provision's language and structure—requires closer examination.

B

In *Castillo*, the Court interpreted §924(c) in its original version, though Congress had at that point already amended the provision. Here, the applicable principle is that Congress does not enact substantive changes *sub silentio*. See *Director of Revenue of Mo.* v. *CoBank ACB*, 531 U. S. 316, 323 (2001). In light of *Castillo'*s determination that the machinegun provision in the previous version of §924 is an element, a change should not be inferred "[a]bsent a clear indication from Congress of a change in policy." *Grogan* v. *Garner*, 498 U. S. 279, 290 (1991); see also *Rivers* v. *Roadway Express, Inc.*, 511 U. S. 298, 313, n. 12 (1994) ("[W]hen this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law").

The Government argues that the 1998 amendment restructuring §924(c) demonstrates the congressional judgment to reclassify the machinegun provision as a sentencing factor, rather than as an offense element. But the better understanding, as the Government acknowledged in its submission in *Castillo*, is that "there is nothing to suggest that the 1998 amendments were intended to

change, rather than simply reorganize and clarify, [§924]'s treatment of firearm type."  Brief for United States, O. T. 1999, No. 99–658, p. 41.  A closer review of the 1998 amendment confirms this.

There are three principal differences between the previous and current versions of §924(c): two substantive changes and a third regarding the stylistic structure of the statute.  The first difference, as discussed above, *supra,* at 10, is that the amendment changed what were once mandatory sentences into mandatory minimum sentences.  A person convicted of the primary offense of using or carrying a firearm during a crime of violence was once to "be sentenced to imprisonment for five years," but under the current version he or she is to "be sentenced to a term of imprisonment of not less than 5 years."

The second difference is that the amended version includes the word "possesses" in addition to "uses or carries" in its principal paragraph, and then adds the substantive provisions in §§924(c)(1)(A)(ii) and (iii), which provide mandatory minimums for brandishing (7 years) and discharging (10 years) the firearm.  These provisions are new substantive additions to the text of the previous version, which provided a bare 5-year mandatory minimum for any offender who "use[d] or carrie[d] a firearm," without concern for how the firearm was used.

The changes were a direct response to this Court's decision in *Bailey* v. *United States*, 516 U. S. 137 (1995), which held that the word "use" in the pre-amendment version of §924 "must connote more than mere possession of a firearm by a person who commits a drug offense."  *Id.*, at 143. The Court in *Bailey* went on to observe that, "[h]ad Congress intended possession alone to trigger liability under §924(c)(1), it easily could have so provided" by using the word "possess," as it had so frequently done in other statutory provisions.  *Ibid.*  Three years later, Congress made the change and added the word "possesses" to the princi-

pal paragraph. Congress additionally provided mandatory sentences above the 5-year minimum depending on whether and how the firearm was used. Sections 924(c)(1)(A)(ii) and (iii) provide sentencing enhancements for brandishing or discharging the firearm, and the Court has held that these enhancements are sentencing factors to be found by a judge. See *Harris*, 536 U. S., at 552−556; see also *Dean* v. *United States*, 556 U. S. ___, ___ (2009) (slip op., at 5) (referring to the brandishing and discharge provisions as "sentencing factors"). The 1998 amendment was colloquially known as the "Bailey Fix Act." 144 Cong. Rec. 26608 (1998) (remarks of Sen. DeWine); see also *Dean, supra,* at ___ (STEVENS, J., dissenting) (slip op., at 3).

Aside from shifting the mandatory sentences to mandatory minimums, and this so-called *Bailey* fix, Congress left the substance of the statute unchanged. Neither of these substantive changes suggests that Congress meant to transform the machinegun provision from an element into a sentencing factor.

The Government stresses a third, structural, difference in the statute, pointing out that the machinegun provision now resides in a separate subsection, §924(c)(1)(B), whereas it once resided in the principal paragraph that unmistakably lists offense elements. This structural or stylistic change, though, does not provide a "clear indication" that Congress meant to alter its treatment of machineguns as an offense element. See *Grogan*, 498 U. S., at 290. A more logical explanation for the restructuring is that it broke up a lengthy principal paragraph, which exceeded 250 words even before adding more to it for the *Bailey* fix, into a more readable statute. This is in step with current legislative drafting guidelines, which advise drafters to break lengthy statutory provisions into separate subsections that can be read more easily. See House Legislative Counsel's Manual on Drafting Style, HLC No.

104.1, §312, pp. 23−25 (1995); Senate Office of the Legislative Counsel, *Legislative Drafting Manual* §112, pp. 10−11 (1997).

While the Court has indicated that placing factors in separate subsections is one way Congress might signal that it is treating them as sentencing factors as opposed to elements, *Castillo*, 530 U. S., at 124−125, *Harris*, 536 U. S., at 552−553, it has rejected the view that this structural consideration predominates even when other factors point in the other direction, *id.,* at 553 ("[E]ven if a statute 'has a look to it suggesting that the numbered subsections are only sentencing provisions,'" the Court will not ignore "compelling evidence to the contrary" (quoting *Jones*, 526 U. S., at 232)). For instance, in *Jones* the Court found that the federal carjacking statute set forth elements of multiple offenses despite a structure similar to the statute at issue here. *Id.,* at 232−239. And in *Harris*, the Court was careful to point out that, unlike the case at bar, the other *Castillo* factors "reinforce[d] the single-offense interpretation implied by the statute's structure." 536 U. S., at 553.

In examining the amended version of §924(c)'s structure, there is an additional consideration that supports interpreting the machinegun provision to be an offense element. As explained above, the brandishing and discharge provisions codified in §924(A)(ii) and (iii) do state sentencing factors. See *Harris, supra,* at 552−556; *Dean, supra,* at ___ (slip op., at 5). Had Congress intended to treat firearm type as a sentencing factor, it likely would have listed firearm types as clauses (iv) and (v) of subparagraph (A), instead of as clauses (i) and (ii) of subparagraph (B). By listing firearm type in stand-alone subparagraph (B), Congress set it apart from the sentencing factors in (A)(ii) and (iii); this is consistent with preserving firearm type as an element of a separate offense.

To be sure, there are some arguments in favor of treating the machinegun provision as a sentencing factor. The

current structure of §924(c) is more favorable to that interpretation than was true in *Castillo*, particularly because the machinegun provision is now positioned between the sentencing factors provided in (A)(ii) and (iii), see *Harris*, *supra*, at 552−556, and the recidivist provisions in (C)(i) and (ii), which are typically sentencing factors as well. See *Almendarez-Torres*, 523 U. S., at 230. These points are overcome, however, by the substantial weight of the other *Castillo* factors and the principle that Congress would not enact so significant a change without a clear indication of its purpose to do so. The evident congressional purpose was to amend the statute to counteract *Bailey* and to make the statute more readable but not otherwise to alter the substance of the statute. The analysis and holding of *Castillo* control this case. The machinegun provision in §924(c)(1)(B)(ii) is an element of an offense.

\*          \*          \*

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–1569

_____

## UNITED STATES, PETITIONER *v.* MARTIN O'BRIEN AND ARTHUR BURGESS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[May 24, 2010]

JUSTICE STEVENS, concurring.

A "sentencing factor" may serve two very different functions. As a historical matter, the term has described a fact that a trial judge might rely upon when choosing a specific sentence within the range authorized by the legislature. In that setting, the judge has broad discretion in determining both the significance of the factor and whether it has been established by reliable evidence.

In the 1970's and 1980's, as part of a national effort to enact tougher sentences,[1] a new type of "sentencing factor" emerged. Since then the term has been used to describe facts, found by the judge by a preponderance of the evidence, that have the effect of imposing mandatory limits on a sentencing judge's discretion. When used as an element of a mandatory sentencing scheme, a sentencing factor is the functional equivalent of an element of the

_____

[1] "By 1990, forty-six states had enacted mandatory sentence enhancement laws, and most states had a wide variety of these provisions." Lowenthal, Mandatory Sentencing Laws: Undermining the Effectiveness of Determinate Sentencing Reform, 81 Cal. L. Rev. 61, 64–65 (1993) (footnote omitted); see also *id.*, at 69 ("[M]ost of the current mandatory enhancement laws did not appear until the 1970s"); Schulhofer, Rethinking Mandatory Minimums, 28 Wake Forest L. Rev. 199, 200–201 (1993) (discussing history of federal mandatory minimum sentencing regime).

criminal offense itself. In these circumstances, I continue to believe the Constitution requires proof beyond a reasonable doubt of this "factor."

## I

We first encountered the use of a "sentencing factor" in the mandatory minimum context in *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986), when we examined the constitutionality of Pennsylvania's 1982 Mandatory Minimum Sentencing Act (Act).[2] The Pennsylvania statute subjected anyone convicted of a specified felony to a mandatory minimum 5-year sentence if the trial judge found, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" during the commission of the offense. See *id.*, at 81–82. In four prosecutions under the Act, the trial judges had each held that the statute was unconstitutional and imposed sentences lower than the 5-year mandatory minimum, presumably because they recognized that the statute treated the visible possession of a firearm as the functional equivalent of an offense element. *Id.*, at 82. On appeal, the Pennsylvania Supreme Court consolidated the four cases and reversed.[3] *Id.*, at 83. It reasoned that because visible possession of a firearm was a mere "sentencing factor," rather than an element of any of the specified offenses defined by the legislature, the protections afforded by cases like *In re Winship*, 397 U. S. 358 (1970),[4] did not apply.

A bare majority of the *McMillan* Court endorsed this

---

[2] See *Apprendi* v. *New Jersey*, 530 U. S. 466, 485 (2000) ("It was in *McMillan* . . . that this Court, for the first time, coined the term 'sentencing factor' to refer to a fact that was not found by a jury but that could affect the sentence imposed by the judge").

[3] *Commonwealth* v. *Wright*, 508 Pa. 25, 494 A. 2d 354 (1985).

[4] In *Winship*, the Court "explicitly" held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U. S., at 364.

novel use of the sentencing factor concept. Five Justices concluded that the prerequisite for a mandatory sentence is just a "sentencing factor," rather than an "element of the offense," because the factor does not "alte[r] the maximum penalty for the crime" and merely "limit[s] the sentencing court's discretion in selecting a penalty within the range already available to it." 477 U. S., at 87–88. Yet, although the Pennsylvania Act's 5-year mandatory sentence for visible possession of a firearm during the commission of an offense did not exceed the statutory maximum that otherwise applied for the crimes of conviction, a positive finding on the so-called sentencing factor mandated the imposition of a sentence that exceeded the punishment the defendant would have otherwise received. See *id.*, at 103–104 (STEVENS, J., dissenting).

The majority opinion in *McMillan* can fairly be described as pathmarking, but unlike one of its predecessors, *Winship*, it pointed in the wrong direction. For reasons set forth in the opinions joined by the four dissenting Justices in *McMillan*, I continue to believe that *McMillan* was incorrectly decided. See *id.*, at 93–94 (Marshall, J., dissenting); *id.*, at 95–104 (STEVENS, J., dissenting).

## II

Not only was *McMillan* wrong the day it was decided, but its reasoning has been substantially undermined—if not eviscerated—by the development of our Sixth Amendment jurisprudence in more recent years. We now understand that "'[i]t is unconstitutional [under the Sixth Amendment] for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Apprendi* v. *New Jersey*, 530 U. S. 466, 490 (2000) (quoting *Jones* v. *United States*, 526 U. S. 227, 252–253 (1999) (STEVENS, J., concurring)). Harmonizing *Apprendi* with our existing Sixth Amendment jurisprudence, we ex-

plained that "any fact that increases the penalty for a crime *beyond* the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U. S., at 490 (emphasis added). In other words, we narrowed our holding to those facts that effectively raised the ceiling on the offense, but did not then consider whether the logic of our holding applied also to those facts necessary to set the floor of a particular sentence.

As JUSTICE THOMAS eloquently explained in his dissent in *Harris* v. *United States*, 536 U. S. 545, 572 (2002), the reasoning in our decision in *Apprendi* applies with equal force in the context of mandatory minimums. There is, quite simply, no reason to distinguish between facts that trigger punishment in excess of the statutory maximum and facts that trigger a mandatory minimum. This case vividly illustrates the point. It is quite plain that there is a world of difference between the 8½-year sentence and the 7-year sentence the judge imposed on the defendants in this case and the 30-year sentence mandated by the machinegun finding under 18 U. S. C. §924(c)(1)(B).

Mandatory minimums may have a particularly acute practical effect in this type of statutory scheme which contains an *implied* statutory maximum of life, see *ante*, at 10. There is, in this type of case, no ceiling; there is only a floor below which a sentence cannot fall. Furthermore, absent a positive finding on one of §924(c)(1)'s enumerated factors, it is quite clear that no judge would impose a sentence as great as the sentences commanded by the provision at issue in this case. Indeed, it appears that, but for those subject to the 30-year mandatory minimum, no defendant has *ever* been sentenced to a sentence anywhere near 30 years for a §924(c) offense. See Brief for Respondent O'Brien 46–47, and n. 15.

*Apprendi* should have signaled the end of *McMillan*, just as it signaled the unconstitutionality of state and

federal determinate sentencing schemes in *Blakely* v. *Washington*, 542 U. S. 296 (2004), and *United States* v. *Booker*, 543 U. S. 220 (2005). But thanks to an unpersuasive attempt to distinguish *Apprendi*,[5] and a reluctant *Apprendi* dissenter, *McMillan* survived over the protest of four Members of the Court. See *Harris*, 536 U. S., at 569–570 (BREYER, J., concurring in part and concurring in judgment) ("I cannot easily distinguish *Apprendi* . . . from this case in terms of logic. For that reason, I cannot agree with the plurality's opinion insofar as it finds such a distinction. At the same time . . . I cannot yet accept [*Apprendi*'s] rule"). It appears, however, that the reluctant *Apprendi* dissenter may no longer be reluctant.[6]

I am therefore in full agreement with JUSTICE THOMAS' separate writing today, *post*, at 1–2, as I was with his *Harris* dissent. *McMillan* and *Harris* should be overruled, at least to the extent that they authorize judicial factfinding on a preponderance of the evidence standard of facts that "expos[e] a defendant to [a] greater punishment than what is otherwise legally prescribed . . ." *Harris*, 536 U. S., at 579 (THOMAS, J., dissenting). Any such fact is the functional equivalent of an element of the offense.

———————

[5] Consistent with the attempt in *Harris* v. *United States*, 536 U. S. 545 (2002), to distinguish *Apprendi*, JUSTICE KENNEDY's fine opinion for the Court today employs some of the same acrobatics to distinguish *Harris* from the present case. *Harris* also involved §924(c)(1), though a different subsection; its reading of the mandatory minimum for "brandishing" a firearm contained in 18 U. S. C. §924(c)(1)(A) as a sentencing factor is not so easily distinguished from the nearly identical mandatory minimum for possessing a "machinegun" under §924(c)(1)(B).

[6] "But in *Harris*, I said that I thought *Apprendi* does cover mandatory minimums, but I don't accept *Apprendi*. Well, at some point I guess I have to accept *Apprendi*, because it's the law and has been for some time. So if . . . if that should become an issue about whether mandatory minimums are treated like the maximums for *Apprendi* purposes, should we reset the case for argument?" Tr. of Oral Arg. 20 (question by BREYER, J.).

### III

In my view, the simplest, and most correct, solution to the case before us would be to recognize that any fact mandating the imposition of a sentence more severe than a judge would otherwise have discretion to impose should be treated as an element of the offense. The unanimity of our decision today does not imply that *McMillan* is safe from a direct challenge to its foundation.

# SUPREME COURT OF THE UNITED STATES

———————

No. 08–1569

———————

## UNITED STATES, PETITIONER *v.* MARTIN O'BRIEN AND ARTHUR BURGESS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[May 24, 2010]

JUSTICE THOMAS, concurring in the judgment.

In *Harris* v. *United States*, 536 U. S. 545 (2002), this Court held that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum,' whether the statute calls it an element or a sentencing factor, 'must be submitted to a jury, and proved beyond a reasonable doubt,'" *id.*, at 550 (quoting *Apprendi* v. *New Jersey*, 530 U. S. 466, 490 (2000)). I continue to believe that this constitutional requirement applies to sentencing facts that, like the machinegun enhancement at issue here, 18 U. S. C. §924(c)(1)(B)(ii), "alte[r] the [defendant's] statutorily mandated sentencing range, by increasing the mandatory minimum sentence," regardless of whether they alter the statutory maximum penalty, *Harris*, 536 U. S., at 577 (THOMAS, J., dissenting); see *id.*, at 577–578 ("As a matter of common sense, an increased mandatory minimum heightens the loss of liberty and represents the increased stigma society attaches to the offense. Consequently, facts that trigger an increased mandatory minimum sentence warrant constitutional safeguards").

In my view, it makes no difference whether the sentencing fact "vaults a defendant's mandatory minimum sentence" by many years, *ante*, at 10, or only "'incremental[ly] changes'" it by a few, *ibid.* (quoting *Harris*, *supra*, at 554).

Nor does it make a difference whether the sentencing fact "involve[s] characteristics of the offender" or "[c]haracteristics of the offense," *ante*, at 8, or which direction the other factors in the Court's five-factor test may tilt. One question decides the matter: If a sentencing fact either "raises the floor or raises the ceiling" of the range of punishments to which a defendant is exposed, it is, "'by definition [an] "elemen[t]."'" *Harris*, *supra*, at 579 (THOMAS, J., dissenting) (quoting *Apprendi*, *supra*, at 483, n. 10).

Without a finding that a defendant used a machinegun, the penalty range for a conviction under §924(c)(1)(A)(i) is five years to life imprisonment. But once that finding is added, the penalty range becomes harsher—30 years to life imprisonment, §924(c)(1)(B)(ii)—thus "expos[ing] a defendant to greater punishment than what is otherwise legally prescribed," *Harris*, 536 U. S., at 579 (THOMAS, J., dissenting). As a consequence, "it is ultimately beside the point whether as a matter of statutory interpretation [the machinegun enhancement] is a sentencing factor." *Id.*, at 576. "[A]s a constitutional matter," because it establishes a harsher range of punishments, it must be treated as an element of a separate, aggravated offense that is submitted to a jury and proved beyond a reasonable doubt. *Ibid*.

Because the Court reaches this same conclusion based on its analysis of a five-factor test, see *ante*, at 6–16, I concur in the judgment.