NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2480
_____

UNITED STATES OF AMERICA

v.

MARTIN MUELLER,
                    Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-08-cr-00139-001)
District Judge: Honorable Anita B. Brody
_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2010

Before:  RENDELL, JORDAN and HARDIMAN, Circuit Judges.

(Filed: December 23, 2010 )
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

        Defendant Martin Mueller appeals his conviction for possession of a firearm by a

convicted felon in violation of 18 U.S.C. § 922(g)(1) following a jury trial.  Mueller

argues that the District Court for the Eastern District of Pennsylvania abused its

discretion in refusing the jury's request during deliberations to hold a gun that had been

admitted into evidence. We reject Mueller's argument that the District Court erred in declining the jury's request and, accordingly, we will affirm Mueller's conviction.

I.

The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231 because the defendant was charged in an indictment with violations of federal criminal law. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

Because we write exclusively for the parties, we will provide only those facts relevant to our analysis. In May 2006, Philadelphia police officers stopped Mueller's vehicle because they observed him driving erratically. The officers pulled Mueller over because they suspected that he was driving under the influence of alcohol. Mueller and the officers provided divergent accounts of the events that followed. The factual dispute does not affect our disposition of the case.

The officers claim that, upon asking Mueller for his license, they observed that his eyes were extremely bloodshot and that when they asked him to exit his vehicle, he "essentially fell out" of the car and was forced to prop himself up with the car door. According to the Government, when Mueller turned around to be handcuffed, the officers saw a black firearm hanging out of his back pants pocket. At the time, Mueller claimed the gun belonged to his father. After handcuffing Mueller and seizing the gun, the officers searched his person and discovered a small quantity of heroin. In processing Mueller, the officers discovered that he had been driving with a suspended license; pursuant to Pennsylvania's "Live Stop" program, they inventoried and impounded Mueller's vehicle.

2

Mueller paints a different picture of the facts surrounding his arrest. He was driving his late father's car, and it was the road that swerved, not him. When the officers pulled him over, he handed them the vehicle's registration and his insurance card and volunteered that his license had been suspended. He denied appearing intoxicated and claimed that he willingly complied with the officers' requests that he turn off the vehicle, hand over the keys and step out of vehicle to be handcuffed. Once he was handcuffed, the officers patted him down. At trial, he denied that the officers found a gun in his pocket and claimed that they found it in the trunk of his vehicle when they searched it following his arrest. Mueller testified that the gun belonged to his late father, the owner of the car, and that he had never touched it in his life.

Mueller's girlfriend, Ms. Kirkland, testified that, two months earlier, when she drove Mueller's father to the hospital (where he died shortly after), she saw his father put the gun in the trunk. She said that Mueller's father always kept his gun with him. However, she admitted having no involvement with the car after this point and no knowledge of whether Mueller had access to or had driven the car on some other occasion between his father's death and the night at issue here.

Mueller was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 942(e) and simple possession of heroin in violation of 21 U.S.C. § U.S.C. 844(a). He pleaded guilty to the drug charge but went to trial on the gun charge in January 2009.

At trial, Mueller's counsel, Kai Scott, tried to discredit the officers' account of Mueller's arrest by challenging the plausibility of the Government's assertion that a .357

3

Magnum was ever in Mueller's back pocket, urging that if the Government's version of events were credited, the gun would not have stayed in Mueller's back pocket during his stumbling exit from his vehicle. Scott also argued that the officers would surely have spotted the gun through the car window with their flashlights prior to handcuffing the defendant.

Approximately one hour into the jury's deliberations at the close of trial, the jury sent the District Court judge a note requesting to see the police report and examine the gun. The jurors said they needed to hold the gun so they could place it in one of their back pockets to demonstrate Mueller's alleged possession of the gun. The judge supplied the police report but, in considering whether to show the gun to the jury, she consulted with the Court marshal, who advised that it was the Court's practice to not let the jury handle a gun admitted into evidence. Rather than letting jury members handle the gun in the jury room, the judge said that the courtroom deputy could go from juror to juror in the courtroom to show each of them the gun. When jurors asked the judge why they could not hold the gun or place it into their own pant pockets, she explained that it would be against courthouse policy, which she did not want to violate.

II.

We review a district court's denial of a jury request to access evidence under an abuse of discretion standard. *See United States v. Shabazz*, 564 F.3d 280, 285 (3d Cir. 2009). Mueller claims that the District Court abused its discretion in limiting the jury's access to the handgun. Finding little caselaw on point, Mueller analogizes the District Court's restriction on the jury's physical access to the handgun to a court's refusal to

4

allow a jury to have a portion of the trial transcript read back to them.  Mueller argues

that a jury's request for evidence can only be denied when necessary to the rationale for

limiting access to the type of evidence at issue.  Here, where the gun had been secured

and posed no safety threat, the District Court had no legitimate reason for refusing to

provide the jury with full access to the firearm as it requested.  Mueller contends that this

error was prejudicial and, thus, that we should vacate his conviction and order a new trial.

We disagree.

An abuse of discretion only occurs where the district court's decision is

"'arbitrary, fanciful, or clearly unreasonable' – in short, where 'no reasonable person

would adopt the district court's view.'"  *United States v. Green*, 617 F.3d 233, 239 (3d

Cir. 2010) (quoting *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009)).  As

Mueller observed, we have not specifically addressed when it is proper for a judge to

refuse a jury's request for physical access to evidence.  Cases discussing jury requests for

information primarily deal with jury requests for trial testimony.  In this context, we defer

to district courts' "broad discretion in deciding whether to accede to a jury's request."

*United States v. Bertoli*, 40 F.3d 1384, 1400 (3d Cir. 1994) (internal quotation marks and

citation omitted).[1]

---

[1] In the trial testimony context, we have limited district courts' use of this discretion to situations where:  (1) the requests are for lengthy testimony and, thus, would slow down the trial; or (2) there is a high risk that jurors will give undue weight to the portion of the testimony read back to them.  *Bertoli*, 40 F.3d at 1400.  Where we are considering the propriety of a refusal to handle physical evidence, these risks are not germane.  Thus, we will not apply these limitations on the District Court's discretion here.

Though there is no *per se* bar on allowing jurors to hold a firearm that has been entered into evidence, *see United States v. Burrell*, 963 F.2d 976, 982-83 (7th Cir. 1992); *United States v. Gonzales*, 121 F.3d 928, 944-45 (5th Cir. 1997), *overruled in part on other grounds by United States v. O'Brien*, 130 S. Ct. 2169, 2180 (2010), *as recognized in United States v. Johnson*, 2010 WL 4269205, \*3-4 (5th Cir. Oct. 27, 2010), the District Court operated within its broad discretion in denying the jury's requests. Mueller argues that the District Court improperly relied on "court policy," as stated by the U.S. Marshal, apparently concerned with safety. Because the gun was secured, safety was not a valid concern.

We reject Mueller's argument because we have no way of knowing that safety was the *sole* factor that motivated the Court's denial of the jury's request. The judge may have considered other appropriate factors like the impropriety of jury experimentation with the gun, *see, e.g.*, *Simon v. Kuhlman*, 549 F. Supp. 1202, 1205 (S.D.N.Y. 1982) (noting the impropriety of allowing the jury to place a stocking on the head of another juror to determine whether an identification could be made in such conditions because the "texture and thickness might differ from those of the stocking used in the attempted robbery"), and the "policy" itself may have been based on considerations other than safety alone. Moreover, even if safety was the judge's primary concern and the foundation for the policy against juror access to handguns, it was not "arbitrary" or wholly irrational for the District Court to, at least in part, base its denial on a longstanding courtroom policy against jurors' handling of guns, loaded or not. It is not the case that "no reasonable person" would decide that the jurors should not physically

6

handle a gun in a courtroom setting, and, especially, as part of a simulation. *Green*, 617 F.3d at 239. In fact, had the jurors been granted access to the gun and had they attempted to re-enact the events to see if the gun would fit in a pants pocket, and, perhaps, stay there or fall out as Mueller had urged, it might have been unreasonable for the Court to permit it due to the very real danger that the jury would draw a conclusion based on evidence not in the record – namely, someone else's pants pocket.

Based on our conclusion that the District Court did not abuse its discretion in limiting the jury's physical access to the handgun, we will affirm Mueller's conviction.