[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10655
Non-Argument Calendar

_____

D.C. Docket No. 5:11-cv-00098-JES-TBS

DERRICK STEWART,

Petitioner-Appellant,

versus

WARDEN, FCC COLEMAN-LOW,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 9, 2014)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Derrick Stewart, a federal prisoner proceeding pro se, appeals from the

dismissal of his 28 U.S.C. § 2241 habeas corpus petition. Stewart raised two

claims below, asserting that the following cases represented new rules of law that

should be applied retroactively to his case: (1) Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010); and (2) United States v. O'Brien, 560 U.S. 218 (2010).  On appeal, Stewart argues that the district court erred in dismissing both claims and in concluding that § 2241 relief was inappropriate.  After careful review, we affirm.[1]

We review de novo the district court's denial of a § 2241 habeas corpus petition.  Cook v. Wiley, 208 F.3d 1314, 1317 (11th Cir. 2000).  Whether a prisoner may bring a § 2241 petition under the savings clause of § 2255(e) is also reviewed de novo.  Williams v. Warden, Fed. Bureau of Prisons, 713 F.3d 1332, 1337 (11th Cir. 2013), petition for cert. filed, (U.S. Apr. 8, 2014) (No. 13-1221). The applicability of the savings clause is a threshold jurisdictional issue, as § 2255(e) serves to limit the district court's subject matter jurisdiction over § 2241 petitions.  Bryant v. Warden, FCC Coleman, 738 F.3d 1253, 1262-63 (11th Cir. 2013); Williams, 713 F.3d at 1337-40.

Generally, collateral attacks on a federal conviction or sentence should be brought under § 2255.  Sawyer v. Holder, 326 F.3d 1363, 1365 (11th Cir. 2003).

---

[1]    As an initial matter, we reject the government's argument that we lack appellate jurisdiction to consider the denial of the § 2241 petition.  As the record shows, Stewart's notice of appeal was dated on January 29, which was within 60 days of the district court's November 30, 2011 dismissal of Stewart's § 2241 petition, and thus, timely per the prison mailbox rule. See United States v. Glover, 686 F.3d 1203, 1205 (11th Cir. 2012); Fed.R.App.P. 4(a)(1)(B).  As for the government's argument that Stewart's notice of appeal failed to specify the order being appealed from, it also falls short.  While Stewart specified the January 9, 2012 order in his notice of appeal, the face of his notice of appeal makes clear that he viewed that order as the final order in his case.  Construing his pro se notice liberally, Stewart intended to appeal the denial of his underlying petition.  See Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  Therefore, we have jurisdiction to hear Stewart's entire appeal, and we proceed accordingly.

The savings clause of § 2255, however, permits a federal prisoner, under limited circumstances, to file a § 2241 habeas petition. See id.; see also 28 U.S.C. § 2255(e). The savings clause provides that:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e). The statutory restriction on filing second or successive § 2255 motions, standing alone, does not render § 2255 "inadequate or ineffective" for purposes of the savings clause. Gilbert v. United States, 640 F.3d 1293, 1308 (11th Cir. 2011) (en banc); see also 28 U.S.C. § 2255(h).

In Williams, we held that to satisfy § 2255's savings clause, at least two criteria must be met: (1) the claim must be based upon a retroactively applicable Supreme Court decision; and (2) the Supreme Court decision must have overturned a Circuit precedent that squarely resolved the claim such that the petitioner could not have meaningfully raised it at trial, on appeal, or in an initial § 2255 motion. 713 F.3d at 1343. We noted that, while the above two criteria were necessary, they were not necessarily sufficient to entitle a petitioner to savings clause relief. Id. In Bryant, we synthesized this Court's precedent and laid out a five-part test containing further criteria for when § 2255's savings clause allows the district court to entertain a § 2241 petition. 738 F.3d at 1274. Under Bryant, in order to

3

have the savings clause permit a § 2241 petition of a sentencing nature, the petitioner must establish that: (1) the claim that he seeks to advance was squarely foreclosed by binding precedent throughout sentencing, direct appeal, and initial § 2255 motion; (2) subsequent to a first § 2255 motion, the precedent that had foreclosed the claim was overturned; (3) the new rule, upon which the claim relies, applies retroactively on collateral review; (4) based on the retroactive application of the new rule of law, the petitioner's sentence exceeds the statutorily authorized maximum sentence; and (5) the savings clause reaches the specific type of error in question (in Bryant, whether a sentencing, and not an actual innocence, claim was cognizable). Id.

In Bryant, we relied on the guidance provided by the Supreme Court in Schriro v. Summerlin, 542 U.S. 348 (2004), in assessing whether a decision applied retroactively to cases on collateral review. Bryant, 738 F.3d at 1277-78. In Schriro, the Supreme Court explained that its decisions that result in a "new rule" generally apply to cases still pending on direct review, but not to convictions that are already final. 542 U.S. at 351. However, new "substantive" rules generally apply retroactively, including (1) decisions that narrow the scope of a criminal statute by interpreting its terms, and (2) constitutional determinations that place certain conduct or persons beyond the state's power to punish. Id. at 351-52. New procedural rules, however, generally do not apply retroactively, unless they

4

are part of a small set of "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Id. at 352 (quotations omitted). To meet the "watershed" test, the rule must be one "without which the likelihood of an accurate conviction is seriously diminished." Id. (emphasis removed and quotation omitted).

The district court did not err in dismissing Stewart's petition in this case. First, Carachuri-Rosendo does not apply to Stewart's case. Carachuri-Rosendo specifically involved the definition of "aggravated felony" in the Immigration and Nationality Act ("INA"). See 560 U.S. at 581-82. Its ultimate holding that non-recidivist simple drug possession could not be an "aggravated felony" has no bearing on whether such an offense could be a "felony drug offense" under 21 U.S.C. § 841. See 21 U.S.C. § 802(44) (defining "felony drug offense" as an "offense that is punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs . . . ."); Burgess v. United States, 553 U.S. 124, 126 (2008) (holding that § 802(44) is the operable definition of "felony drug offense" for purposes of a § 841 sentencing enhancement). Indeed, the INA's "aggravated felony" definition turns, in part, on the authorized sentence for an analogous federal offense, while "felony drug offense" depends on the authorized sentence for the offense in question, even for a state offense. Moreover, even if the issue could be considered,

Stewart's 1991 Florida conviction for cocaine possession plainly met the definition of "felony drug offense," since it carried a potential sentence of more than one-year imprisonment. See Fla. Stat. §§ 775.082(3)(d) and 893.13(1)(f) (1991). In short, because Carachuri-Rosendo has no applicability to Stewart's case, it cannot be a Supreme Court case that overturned precedent that had previously foreclosed Stewart's claim. See Bryant, 738 F.3d at 1274.

Stewart's O'Brien-based claim also fails to invoke § 2255(e). To begin with, it is difficult to see how O'Brien's holding and analysis -- which are limited to the § 924(c)(1)(B)(ii) machinegun provision, see 560 U.S. at 221-- applies to Stewart's case. If O'Brien, which was decided before Alleyne v. United States, 570 U.S. ___, 133 S.Ct. 2151 (2013), applies here at all, its application is limited to the instruction that O'Brien gives about how to discern Congressional intent in determining whether a statutory provision constitutes an element of the offense or a sentencing factor. See O'Brien, 560 U.S. at 225-35. In that context, however, O'Brien did not announce a new rule of law, because there, the Supreme Court expressly noted that its statutory analysis was controlled by, and identical to, the analysis in Castillo v. United States, 530 U.S. 120 (2000). See O'Brien, 560 U.S. at 235. Castillo, decided in 2000, was available to Stewart at the time that he filed his initial § 2255 motion, in 2001. Stewart's argument, therefore, was not squarely

6

foreclosed at the time of his § 2255 motion, and O'Brien cannot represent a new rule of law that opened the door to his claim.

To the extent that Stewart argues that O'Brien's holding was constitutional in nature, that holding would be similar to the Supreme Court's later holding in Alleyne. But we recently held that Alleyne claims are not retroactively applicable in a § 2241 proceeding via § 2255(e)'s savings clause. See Jeanty v. Warden, FCI Miami, __ F.3d __, 2014 WL 3673382, *2 (11th Cir. July 22, 2014). Accordingly, § 2241 relief is unavailable to Stewart on this claim as well. See Bryant, 738 F.3d at 1274.

**AFFIRMED**.