ROGERS, Circuit Judge,
dissenting:
For many of the reasons stated by Judge Kavanaugh, I would vacate the judgment of conviction under 18 U.S.C. § 924(c)(l)(B)(ii). The majority concludes, in applying the doctrine of stare decisis, that “Burwell and his amici have failed to establish that any intervening legal development has weakened, much less removed, the conceptual underpinnings of Harris.” Ante at 510 (Brown, J., majority op.) (emphasis added). But the Supreme Court has twice stated that carrying a machine-gun involves heightened culpability. See United States v. O’Brien, — U.S. -, 130 S.Ct. 2169, 2178, 176 L.Ed.2d 979 (2010) (stating that “choosing” a machine-gun involves “moral depravity”); Castillo v. United States, 530 U.S. 120, 126, 120 5.Ct. 2090, 147 L.Ed.2d 94 (2000) (“[T]he difference between carrying, say, a pistol and carrying a machinegun ... is great, both in degree and kind.”). Undeniably, our holding in United States v. Harris, 959 F.2d 246, 259 (D.C.Cir.1992), that conviction under 18 U.S.C. § 924(c)(1)(B)(ii) did not require proof of mens rea, was premised on the opposite view: “[T]here does not seem to be a significant difference in mens rea between a defendant who commits a drug crime using a pistol and one who commits the same crime using a machine gun; the act is different, but the mental state is equally blameworthy,” id. Dicta or not, see ante at 509 (Brown, J., majority op.), the Supreme Court has twice rejected a key basis underlying Harris’s conclusion that there is no mens rea requirement in § 924(c)(l)(B)(ii).[1] See Patterson v. McLean Credit Union, 491 U.S. 164, 173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); see also Montejo v. Louisiana, 556 U.S. 778, 792-93, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009); D.C. CIR. R. 35(a)(2).
To date, the Supreme Court’s precedent regarding whether a criminal statute should be interpreted as requiring proof of mens rea has involved: (1) statutes that contained an explicit mens rea, but were unclear as to how far the mens rea requirement should “travel”; (2) statutes that were silent but, absent á showing of mens rea, risked criminalizing otherwise innocent conduct; or (3) statutes with minor punishments deemed “public welfare” offenses, where the Court was less concerned with dispensing with a mens rea *520 requirement. Section 924(e)(l)(B)(ii) does not risk criminalizing otherwise innocent conduct in this sense, but the mandated thirty-year minimum, consecutive term of imprisonment means the public welfare exception is inapposite. In the absence of controlling precedent, and given that Harris’s scienter premise has been rejected, I would hold, based on the following analysis, that the severe additional punishment mandated by section 924(c)(1 )(B)(ii) (magnitudes greater than any of the other statutes considered in the relevant Supreme Court precedent) requires for conviction proof of the defendant’s knowledge that the firearm was a machinegun. Accordingly, I respectfully dissent.
I.
In concluding that the fact that the firearm was a machinegun under section 924(c)(1)(B)(ii) is an element of the offense, rather than a sentencing factor, the Supreme Court acknowledged in O’Brien that the structure of section 924(c) demands escalating terms of imprisonment for increasingly culpable conduct. See 130 S.Ct. at 2178. But the Court also stated that it “expresse[d] no views” on whether the provision required proof of mens rea. Id. at 2173. The issue was not before the Court; indeed, to decide it would have required quite a diversion: section 924(c)(l)(B)(ii) does not fit well with Supreme Court precedent determining whether a statute requires proof of mens rea.
Two background principles underlie consideration of Burwell’s statutory challenge. The first is that “determining the mental state required for commission of a federal crime requires ‘construction of the statute and ... inference of the intent of Congress.’ ” Staples v. United States, 511 U.S. 600, 604-05, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (quoting United States v. Balint, 258 U.S. 250, 253, 42 S.Ct. 301, 66 L.Ed. 604 (1922)). The second is that “silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional mens rea element” because courts must “construe the statute in light of the background rules of the common law, in which the requirement of some mens rea for a crime is firmly embedded.” Id. at 605, 114 S.Ct. 1793 (citing United States v. United States Gypsum Co., 438 U.S. 422, 436-37, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)). The Supreme Court has explained:
There can be no doubt that this established concept has influenced our interpretation of criminal statutes. Indeed, we have noted that the common-law rule requiring mens rea has been “followed in regard to statutory crimes even where the statutory definition did not in terms include it.” Relying on the strength of the traditional rule, we have stated that offenses that require no mens rea generally are disfavored, and have suggested that some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime.
Id. at 605-06, 114 S.Ct. 1793 (quoting Balint, 258 U.S. at 251-52, 42 S.Ct. 301) (internal citations omitted).
In addressing these background principles, the Court has adopted three general rules of interpretation:
First, “courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word ‘knowingly as applying that word to each element.” Flores-Figueroa v. United States, 556 U.S. 646, 652, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009) (citing United States v. X-Citement Video, Inc., 513 U.S. 64, 79, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (Stevens, J., concurring) (“[T]he normal, commonsense reading of a subsection of a criminal stat *521 ute introduced by the word ‘knowingly’ is to treat that adverb as modifying each of the elements of the offense identified in the remainder of the subsection.”)). This is a rule fundamentally about grammar— the mens rea is read to “travel” through to the end of the sentence (or statutory subsection).
Second, where the statute is silent as to mens rea, so the first rule provides no source of a mens rea requirement, the Supreme Court has applied a presumption of mens rea to avoid criminalizing otherwise innocent conduct. “[T]he presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct.” United States v. X-Citement Video, Inc., 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); see also, e.g., Staples, 511 U.S. at 614-15, 114 S.Ct. 1793; Liparota v. United States, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985).
Third, the Court has recognized an exception to the background principle disfavoring strict liability crimes for “public welfare” or “regulatory” offenses. “In construing such statutes, [the , Court] ha[s] inferred from silence that Congress did not intend to require proof of mens rea to establish an offense.” Staples, 511 U.S. at 606, 114 S.Ct. 1793. Public welfare offenses have been recognized in “‘limited circumstances.’ Typically, [ ] cases recognizing such offenses involve statutes that regulate potentially harmful or injurious items.” Id. (quoting Gypsum, 438 U.S. at 437, 98 S.Ct. 2864). But public welfare offenses have “almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences.” Id. at 616, 114 S.Ct. 1793. The Court in Staples rejected labeling a statute imposing a ten year prison term as a public welfare offense, noting that “[h]istorically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with mens rea.” Id.
In sum, these traditional rules of statutory interpretation apply, except that silence is not evidence of an absence of a mens rea requirement (at least where the conduct at issue is otherwise innocent). Silence does, however, provide such evidence where the public welfare offense exception applies. Together these three rules suggest that if neither of the first two rules are able to supply a mens rea, then the statute will fall within the third category of public welfare" offenses.[2] Except when, as here, it does not.
A.
To date, the three interpretative rules have worked in tandem in Supreme Court precedent to counsel for or against requiring proof of mens rea. For example, in construing whether the criminal provisions of the Sherman Antitrust Act required proof of mens rea, the Court in Gypsum noted that, although the Act contained no “mention of intent or state of mind,” 438 U.S. at 438, 98 S.Ct. 2864, “the behavior proscribed by the Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct,” id. at 440-41, 98 S.Ct. 2864. The Court thus concluded proof of mens rea was required, in light of the “generally inhospitable attitude to nonmens rea offenses.” Id. at 438, 98 S.Ct. 2864.
Likewise, in Liparota, the Court considered a statute imposing up to five years *522 imprisonment for unlawfully acquiring and possessing food stamps, 7 U.S.C. § 2024(b)(1), see Liparota, 471 U.S. at 420-21, 105 S.Ct. 2084. The statute in Liparota included an explicit mens rea with respect “to some element of the crime,” but was unclear how far through the statute the word “knowingly” traveled. Id. at 424, 105 S.Ct. 2084. The Court concluded proof of mens rea was required because “to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct.” Id. at 426, 105 S.Ct. 2084. Likewise, the Court rejected the contention that the statute was a public welfare offense, because food stamps were far from “a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously' threaten the community’s health or safety.” Id. at 433, 105 S.Ct. 2084.
The Court'in Staples was presented with a statute criminalizing possession of unregistered firearms, including machineguns, with punishment of up to ten years’ imprisonment, 26 U.S.C. § 5861(d); id. § 5845(a)(6), see Staples, 511 U.S. at 602-03, 114 S.Ct. 1793. Although the statute contained no explicit mens rea to “travel” through the subsection, the Court rejected the Government’s argument that the provision was a public welfare offense, noting the “long tradition of widespread lawful gun ownership by private individuals in this country.”
Of course, we might surely classify certain categories of guns — no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation— as items the ownership of which would have the same quasi-suspect character we [have previously attributed to public welfare offenses.] But precisely because guns falling outside those categories traditionally have been widely accepted as lawful possessions, their destructive potential[ ] ... cannot be said to put gun owners sufficiently on notice of the likelihood of regulation ....
Id. at 611-12, 114 S.Ct. 1793.
The Court also observed that because “any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear, into a machinegun within the meaning of the Act,” id. at 615, 114 S.Ct. 1793, imposing strict liability “potentially would impose criminal sanctions on a class of persons whose mental state — ignorance of the characteristics of weapons in their possession — makes their actions entirely innocent,” id. at 614-15, 114 S.Ct. 1793. Finally, the Court concluded that the “harsh” ten years’ imprisonment imposed by the statute, combined with the otherwise innocent nature of the conduct, meant the statute was not a public welfare offense and that it required proof of mens rea. Id. at 616, 618-19, 114 S.Ct. 1793.
Similarly, in X-Citement Video, the Court considered a statute prohibiting “the interstate transportation, shipping, receipt, distribution, or reproduction of visual depictions of minors engaged in sexually explicit conduct,” 513 U.S. at 65-66, 115 S.Ct. 464 (citing 18 U.S.C. § 2252). The statute contained the mens rea “knowingly,” but it was unclear whether it should “travel” through the entire subsection to require proving the defendant knew the age of the person depicted in the video. Id. at 68, 115 S.Ct. 464. The Court concluded that the mens rea traveled through the entire subsection, noting that the age of the person depicted in the video was “the crucial element separating legal innocence from wrongful conduct.” Id. at 73, 115 S.Ct. 464. Furthermore, the Court concluded the statute was not a public welfare of *523 fense because “persons do not harbor settled expectations that the contents of magazines and film are generally subject to stringent public regulation” and the “harsh penaltfy]” of “up to 10 years in prison” counseled against the statute being a strict liability public welfare offense. Id. at 71-72, 115 S.Ct. 464.
B.
The analysis in Dean v. United States, 556 U.S. 568, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009), might at first glance suggest a conflict among the three rules, but it too is consonant with them. The Court held that 18 U.S.C. § 924(c)(l)(A)(iii) does not require proof of mens rea. That subsection provides that if the firearm present during a violent or drug trafficking crime “is discharged,” the defendant shall “be sentenced to a term of imprisonment of not less than 10 years.” 18 U.S.C. § 924(c)(l)(A)(iii). This provision, unlike the ones considered by the Court in the previously discussed cases, was a sentencing factor rather than an offense element. Dean, 556 U.S. at 571, 574, 129 S.Ct. 1849. The Court noted that it “ordinarily resistfs] reading words or elements into a statute that do not appear on its face,” id. at 572, 129 S.Ct. 1849 (internal quotation marks and citation omitted), highlighted that the passive voice of the statute “focuses on an event ... without respect to any actor’s intent or culpability,” id., and compared the provision with another- provision of the statute that did include a mens rea: the “brandishing” provision, 18 U.S.C. § 924(c)(l)(A)(ii),. see Dean, 556 U.S. at 572-73, 129 S.Ct. 1849. Applying the tools of statutory construction, the Court declined to “contort! ] and stretch! ] the statutory language to imply an intent requirement.” Id. at 574,129 S.Ct. 1849.
Upon concluding that the text and structure of the statute did not support requiring proof of mens rea, the Supreme Court turned to the defendant’s contention that the presumption of mens rea should apply. The Court rejected the applicability of the presumption, reasoning that the presumption line of cases involved situations where the conduct -at issue would be innocent if the facts were as the defendant believed them. “It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their unlawful acts.” Id. at 575, 129 S.Ct. 1849 (emphasis in original) (citing, inter alia, 4 W. Blackstone, Commentaries on the Laws of England 26-27 (1769)). The Court noted that “the defendant [was] already guilty of unlawful conduct twice over: a violent or drug trafficking offense and the use, carrying, or possession of a firearm in the course of that offense.” Id.
Thus, neither of the first two interpretative rules — grammatical rules of statutory construction nor the presence of otherwise innocent conduct — counseled in favor of requiring proof of mens rea, and the Court thus held that no such proof was required. Id. at 577, 129 S.Ct. 1849. In so holding, the Court did not, however, classify the provision as a public welfare offense. Nor did it frame the question before it as a choice between offenses that have mens rea requirements and public welfare offenses that do not. See id. at 580, 129 S.Ct. 1849 (Stevens, J., dissenting); Staples, 511 U.S. at 606, 114 S.Ct. 1793 (describing public welfare offenses as exception to rule that congressional silence as to mens rea is not read to mean Congress intended to dispense with requirement). This departure from the usual understanding of the public welfare offenses as being among the “few narrowly delineated exceptions,” Dean, 556 U.S. at 580, 129 S.Ct. 1849 (Stevens, J., dissenting), is explained *524 by the fact that the “discharge” provision at issue in Dean was not an “offense” at all, and thus the public welfare offense exception, and its general limitation to statutes with minor punishments, see Staples, 511 U.S. at 616, 114 S.Ct. 1793, did not influence the Court’s conclusion that the “discharge” provision required no proof of mens rea despite its ten year mandatory prison term. Instead, the provision was a sentencing factor, which “involve[s] special features of the manner in which a basic crime was carried out.” Id. at 574, 129 S.Ct. 1849 (internal quotation marks, citation, and alteration omitted).[3] Because the public welfare offense precedent was inapplicable to the sentencing factor at issue in Dean, the Court had no occasion to decide whether it was creating a new type of strict liability crime, outside the traditional conception of public welfare offenses. The general purpose of sentencing factors is to increase punishment for a proven offense. See Almendarez-Torres v. United States, 523 U.S. 224, 228, 118 S.Ct. 1219, 140 L.Edüd 350 (1998). Because the provision did not deal with an offense, the Court merely had to apply the traditional tools of statutory construction, including the presumption of mens rea for statutes that risk criminalizing otherwise innocent conduct.[4]
C.
In the ease before the court today, the interpretative rules, in their present form, cannot provide the answer to whether the machinegun provision requires proof of mens rea. Section 924(c)(l)(B)(ii) has no explicit mens rea to “travel” through the subsection, and it does not risk criminalizing “entirely innocent” conduct. Thus neither of these two rules counsel in favor of requiring proof of mens rea. But nor do they necessarily require imposition of strict liability either. The narrow exception to the rule favoring proof of mens rea, the public welfare offense exception, does not apply — the Supreme Court has concluded that firearm statutes do not fit within the type of crimes contemplated by the public welfare exception, see Staples, 511 U.S. at 611-12, 114 S.Ct. 1793, and has suggested that the exception has been generally limited to statutes with minor penalties, id. at 616, 618-19, 114 S.Ct. 1793. Section 924(c)(l)(B)(ii) would represent an *525 entirely new category of strict liability for offense elements — one that imposes a sentence magnitudes larger than any of the statutes in the relevant cases the Court has previously considered.
In this uncharted territory, courts reasonably rely on clues from relevant Supreme Court case law. Taking the word “element” in Flores-Figueroa’s description of the first rule (despite the context indicating a grammatical rule, as opposed to a distinction between “elements” and “sentencing factors”), 556 U.S. at 652, 129 S.Ct. 1886, and combining it with a dissected phrase from the second rule, Judge Kavanaugh concludes: “the presumption of mens rea means that, unless Congress plainly indicates otherwise, the Government must prove the defendant’s mens rea for each element of the offense,” post at 528 (Kavanaugh, J., dissenting), regardless of whether that “element” is anywhere near an explicit mens rea, or whether the statute risks criminalizing otherwise innocent conduct. It may be somewhat of a stretch to take half of one inapplicable rule, plus half of another inapplicable rule, and declare it to be the “established and applied [ ] rule,” id. at 537, governing Bur-well’s case.
Rather than setting out a new rule such as this, which the majority fears potentially sweeps into its ambit a host of other applications, see ante at 507-09 (Brown, J., majority op.), this case can be resolved on a narrower ground. The Supreme Court in Staples stated that “[historically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with mens rea.” 511 U.S. at 616, 114 S.Ct. 1793 (emphasis added). Although this statement was made in the context of holding that the public welfare exception was inapplicable, there is no obvious reason to limit the relevance of this consideration to determining whether that exception applies to impose strict liability. If an offense must have a minor punishment to be a public welfare offense, and in so limiting that category the Court was concerned with protecting the background principle disfavoring non-mens rea crimes, then the presence of a “severe penalty,” id. at 618, 114 S.Ct. 1793, should not, without an express statement by Congress, portend a new category of strict liability crimes.
The majority characterizes this conclusion as “broadening] the reach of existing precedent ... [because] [i]n Staples, ... the Court’s consideration of the severity of the penalty was decidedly narrow.” Ante at 513 (Brown, J., majority op.). Although the Court in Staples declined to adopt “a definitive rule of construction to decide [that] case,” 511 U.S. at 618, 114 S.Ct. 1793, the Court was not discussing the general relevance of the severity of a punishment to whether a statute requires proof of mens rea. Instead the Court was considering whether “absent a clear statement from Congress that mens rea is not required, [courts] should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with mens rea.” Id. (emphasis added). The Court was not commenting on whether the severity of the penalty imposed is broadly relevant to the mens rea question outside the context of public welfare offenses, but simply declining to establish a rule definitively limiting the four-corners of public welfare offenses to exclude felonies.
Understood as an independent consideration, rather than as one tethered to the definition of a public welfare offense, the length of the punishment imposed by a statute must be considered in light of the purpose of the mens rea presumption and whether it is rebutted where the statute *526 does not, as the interpretive rule has been defined, criminalize otherwise innocent conduct. In the context of statutes that, absent a showing of mens rea, risked criminalizing otherwise innocent conduct, the Supreme Court has described a punishment of ten years’ imprisonment as “harsh” and “severe.” Staples, 511 U.S. at 616, 618, 114 S.Ct. 1793; X-Citement Video, 513 U.S. at 72, 115 S.Ct. 464. “In such a case, the usual presumption that a defendant must know the facts that make his conduct illegal should apply.” Staples, 511 U.S. at 619, 114 S.Ct. 1793. But where the traditional presumption of mens rea does not apply because the conduct prohibited is not, in the absence of intent, otherwise innocent, a ten-year penalty may not be so harsh as to require more than congressional silence to dispose of the mens rea requirement. See, e.g., ante at 508-09 (Brown, J., majority op.) (citing 18 U.S.C. § 2113, which increases maximum term of imprisonment for certain bank robbery offenses from one to ten years when value of stolen property, money, or thing of value exceeds $1,000); cf. Carter v. United States, 530 U.S. 255, 272-73, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000).
Without deciding how the interpretative rules might unfold in a case with a different statutory punishment, I would take my lead from Staples and hold that the mandated thirty-year consecutive term of imprisonment imposed by section 924(c)(l)(B)(ii) is so severe that it outweighs the fact that the conduct prohibited is not otherwise totally innocent. In O’Brien, the Supreme Court defined the section 924(c)(l)(B)(ii) offense in terms of the automatic firing characteristic of the firearm, see 130 S.Ct. at 2172, given “[t]he immense danger” and “moral depravity in choosing the weapon,” id. at 2178. Congress has determined that possessing a machinegun “during and in relation to any crime of violence or drug trafficking crime,” 18 U.S.C. § 924(c)(1)(A), warrants twenty years’ additional imprisonment over such possession of a semi-automatic assault weapon, compare id. § 924(c)(l)(B)(i), with id. § 924(c)(l)(B)(ii). A leading commenter has observed that the hostility to strict liability for crimes protects a defendant “unaware of the magnitude of the wrong he is doing,” Wayne R. LaFave, Criminal Law 304 (5th ed.2010) (emphasis added); see post at 543 (Kavanaugh, J., dissenting); ante at 516-17 (Sentelle, C.J., concurring) (“I do not think it good enough to posit that someone should know conduct is illegal and therefore avoid it where the illegality of the conduct may be measured in degrees.”). The Court’s observation in Staples, 511 U.S. at 614-15, 114 S.Ct. 1793, is directly on point: “The Government does not dispute ... that virtually any semiautomatic weapon may be converted ... into a machinegun .... Such a gun may give no externally visible indication that it is fully automatic. But in the Government’s view, any person ... can be subject to imprisonment, despite absolute ignorance of the gun’s firing capabilities, if the gun turns out to be automatic.” (internal citations omitted). For punishment, then, of an additional twenty-years’ imprisonment for possessing an automatic, rather than a semi-automatic, firearm, neither silence, nor mere use of a passive voice or the meaning of surrounding provisions, see Dean, 556 U.S. at 572-74, 129 S.Ct. 1849, are sufficient to rebut the traditional mens rea requirement for criminal offenses, and the Government must prove a defendant knew the firearm he possessed was a machinegun in order to obtain a conviction under section 924(c)(l)(B)(ii).
This is not, as the majority charges, an “unbounded” approach, ante at 516 (Brown, J., majority op.); instead it is bound quite tightly by the uniquely severe mandatory term of consecutive imprison *527 ment, as demonstrated by the dearth of cases considering whether proof of mens rea is required in the face of such severe punishment as section 924(c)(l)(B)(ii) mandates. Nor is it unusual, or posing a risk of “spillover,” for courts to balance competing considerations that point in opposite directions; this is what courts usually do anytime they are faced with a question informed by more than one consideration. Cf. United States v. O’Brien, 542 F.3d 921, 924 (1st Cir.2008) (observing that “the [Supreme] Court has developed unique policy and historical tests that complement, and sometimes work to modify, the most straightforward reading of the [statutory] language and structure.”). Indeed the majority does some balancing of its own for, as Judge Kavanaugh points out, see post at 546, by requiring proof of knowledge with respect to the use, carrying, or possession of a firearm under section 924(c), see ante at 503, 507 (Brown, J., majority op.), the majority itself does not limit the presumption solely to statutes that risk criminalizing otherwise innocent conduct — section 924(c) is only triggered upon conviction for a “crime of violence or drug trafficking crime.” I take the Supreme Court at its word when it stated that “the penalty imposed by a statute has been a significant consideration in determining whether the statute should be construed as dispensing with mens rea,” Staples, 511 U.S. at 616, 114 S.Ct. 1793 (emphasis added). It hardly seems a better solution to ignore that consideration in an effort to avoid balancing it against competing concerns, particularly when the Supreme Court has concluded that the “choosing” of a machinegun under section 924(c)(l)(B)(ii) involves “moral depravity,” O’Brien, 130 S.Ct. at 2178, and that mens rea is designed to protect a defendant against the risk of a more severe punishment by possessing a firearm that may appear physically indistinguishable from one to which Congress has attached a far lesser penalty, see Staples, 511 U.S. at 614-15, 114 S.Ct. 1793. Finally, the majority’s critique, see ante at 516 (Brown, J., majority op.), that this approach goes beyond what the court has previously “proposed” is meaningless given that, absent en banc review, three-judge panels acting as the court have been bound by Harris. See LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C.Cir.1996) (en banc).
Accordingly, I would vacate the judgment of conviction of Burwell under 18 U.S.C. § 924(c)(l)(B)(ii), and I respectfully dissent.

. As this court has observed, "Supreme Court dicta tends to have somewhat greater force.” United States v. Dorcely, 454 F.3d 366, 375 (D.C.Cir.2006) (quoting Bangor Hydro-Elec. Co. v. FERC, 78 F.3d 659, 662 (D.C.Cir. 1996)). See Winslow v. FERC, 587 F.3d 1133, 1135 (D.C.Cir.2009).

. There are a few other narrow categories not relevant here. See post at 537-38 n. 10 (Kavanaugh, J., dissenting).

. Justice Sevens disagreed with the Court's implicit conclusion that the distinction between a provision's status as an element or a sentencing factor was relevant to whether a provision must fit within the definition of a public welfare offense in order to be a strict liability offense. See id. at 580-81, 129 S.Ct. 1849 (Stevens, J., dissenting).

. This discussion of Dean suggest a different conclusion than that the "discharge” provision's status as a sentencing factor, rather than an element, is "the crucial distinction,” post at 541 (Kavanaugh, J., dissenting), between Dean and the instant case regarding the operation of the mens rea presumption. Dean, after all, first seemed controlling given the Court's analysis of the statutory text and the fact that the machinegun provision, like the one in Dean, does not risk criminalizing otherwise innocent conduct. If the sentencing factor status were critical to the conclusion in Dean that the mens rea presumption did not apply, one would expect the Supreme Court to have said so in rejecting application of the presumption. Instead the Court explained at length that the presumption did not apply because the conduct at issue was not otherwise innocent. See Dean, 556 U.S. at 574-77, 129 S.Ct. 1849. As the analysis in Dean suggests, there is no rule preventing the presumption in favor of mens rea, where the statute risks criminalizing otherwise innocent conduct, from applying to sentencing factors. But even reading the Court’s rejection of the mens rea presumption rule in Dean to turn on the "discharge” provision's status as a sentencing factor, it would not necessarily follow that the mens rea presumption always applies to statutory elements, regardless of whether the statute does not risk criminalizing otherwise innocent conduct.