**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4422**

UNITED STATES OF AMERICA,

 Plaintiff – Appellee,

 v.

ALBERT LEE ANDREWS, III,

 Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., Senior District Judge. (1:12-cr-00117-NCT-1)

Argued: September 15, 2015      Decided: October 30, 2015

Before WILKINSON, MOTZ, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge Keenan joined.

**ARGUED**: Kearns Davis, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellant. Robert Albert Jamison Lang, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee. **ON BRIEF**: W. Michael Dowling, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellant. Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee.

WILKINSON, Circuit Judge:

Petitioner Albert Lee Andrews challenges here the imposition of a U.S.S.G. § 3C1.1 enhancement for obstructing the administration of justice. The district court applied the enhancement against the defendant for knowingly presenting false testimony at his trial. Inasmuch as the court's finding of obstruction was not clearly erroneous, we affirm the imposition of the enhancement.

I.

In the early morning hours of March 27, 2011, Andrews entered a Domino's Pizza store in Kannapolis, North Carolina armed with a handgun. He ordered an employee at gunpoint back into the office where the manager was working and demanded that the manager open the store safe. When he was told the safe was empty, Andrews stole money from the cash register and from two employees, as well as the manager's wallet. During the encounter, he pointed his gun at Domino's personnel and threatened to shoot on two occasions.

The manager immediately reported the robbery. While searching for Andrews, a police officer found an abandoned automobile that had run off the road and hit two other vehicles. He recovered two wallets from the car, one belonging to Andrews and the other to the Domino's manager. The vehicle also contained a cell phone with photos of Andrews' family, a traffic

citation issued to Andrews, and a bill of sale showing that Andrews owned the vehicle. The cell phone record listed calls made and received in Kannapolis at the time of the robbery. Finally, the officer found a baseball cap that fitted the description of that worn by the robber and was shown through DNA analysis to belong to Andrews.

Andrews was charged with interference with commerce by robbery under 18 U.S.C. § 1951 and carry and use of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii). The defendant pled not guilty and invoked his right to a jury trial. He filed several pro se motions, one of which accused prosecutors of intimidating potential witnesses and blocking their testimony. Prior to trial, he submitted a notice of alibi and a brief describing the alibi testimony. During his opening statement, Andrews' attorney identified two alibi witnesses: Jerrika Hunter, Andrews' girlfriend, and her mother, Monica Moffet. His counsel went on to preview the alibi testimony that each witness intended to give. At trial, Hunter and Moffet testified that Andrews was at their home on the night of the robbery. Another witness, Brandi Lark, the mother of one of Andrews' children, testified that he had visited her home during the night in question and told her that he had robbed a Domino's pizza store. Andrews chose not to testify. The jury found him guilty on all counts.

Upon reviewing Andrews' sentence, this court ruled that he no longer qualified for sentencing as a career offender, vacated his sentence, and remanded for resentencing. United States v. Andrews, 547 Fed.Appx 248 (4th Cir. 2013). Upon remand, the U.S. Probation Office issued a Memorandum that calculated Andrews' total offense level as 22. The government then requested a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. A revised Memorandum added the enhancement as requested, increasing the total offense level to 24. Andrews objected to the two-level enhancement for obstruction.

The district court found sufficient evidence to support the obstruction enhancement. The court stressed that Andrews knew that his attorney was going to present Hunter and Moffet as alibi witnesses. Given his regular communications with his attorney, Andrews must have been aware of the substance of Moffet and Hunter's testimony before trial. Andrews' prior knowledge of the false testimony and subsequent silence during trial, the court stated, amounted to obstruction of justice:

> [W]hen a defendant sees somebody take the stand called by the defendant's lawyer and realizes that person is not telling the truth, that is absolutely telling something that is untrue, whether that defendant in sitting silently and 'allowing that to proceed,' takes a part in trying to deceive the Court. . . . [I]n this case, that's not all of it, because those witnesses testified one after the other. Mr. Andrews watched and heard the testimony of one provide false alibi evidence and sat there while the second was being called, which even if he had not been aware of the

4

alibi information a week before, or the trial brief, which it stretches the imagination to think that he was not aware of it, he understood somebody was being called knowingly for the purpose of giving false information, all of which was being offered for the purpose of deceiving the jury into believing there was a reasonable doubt as to his whereabouts on the night of the armed robbery.

J.A. 39. The court resentenced Andrews to 115 months imprisonment on one count, 84 months consecutive on the other, and five years of supervised release. This appeal followed.

II.

A.

The sole issue before us is the propriety of the enhancement for obstruction of justice. U.S.S.G. § 3C1.1 sets forth in rather broad language the enhancement's scope:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

The commentary to § 3C1.1 lists many examples of covered conduct of which subornation of perjury is one. U.S.S.G. § 3C1.1, cmt. n.4. The commentary then notes further that the above list is "non-exhaustive." Id. Finally, application note 9 of the commentary enumerates several ways in which a defendant can participate in the obstruction of justice: "[T]he defendant is accountable for the defendant's own conduct and for conduct that

5

the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.1, cmt. n. 9. The government bears the burden of proving the facts supporting the enhancement by a preponderance of the evidence. United States v. O'Brien, 560 U.S. 218, 224 (2010).

In United States v. Dunnigan, the Supreme Court instructed district courts to establish "all of the factual predicates" of perjury when finding obstruction of justice on that basis. 507 U.S. 87, 95 (1993). Following that language, this court has reversed sentencing enhancements under § 3C1.1 where the district court failed to find a required factual element of perjury and provided no other basis for the enhancement. E.g., United States v. Perez, 661 F.3d 189, 193-94 (4th Cir. 2011) (faulting the district court for failing to find willfulness); United States v. Smith, 62 F.3d 641, 646-47 (4th Cir. 1995) (finding the court below erroneously applied the enhancement without any specific factual findings). While the broader Guidelines language and commentary certainly suggest that obstruction of a trial may take other forms than subornation of perjury, that language in no way lessens the district court's obligation under our case law to find facts on the critical component of § 3C1.1, namely a willful obstruction or impediment of the administration of justice. Therefore, the enhancement is warranted if the court below made a proper finding of

6

obstruction even if it did not specifically find subornation of perjury.

Many of the purposes animating separate prosecutions for perjury also underlie sentencing enhancements for perjurious obstruction. See Dunnigan, 507 U.S. at 97-98. In fact, the obstruction enhancement of § 3C1.1 may be seen as an intermediate option between condoning patently false testimony altogether and undertaking separate prosecutions for perjury, which both drain prosecutorial resources and raise special difficulties of proof. The Supreme Court has underscored this relationship between the obstruction enhancement and prosecution for perjury:

> A sentence enhancement based on perjury does deter false testimony in much the same way as a separate prosecution for perjury. But the enhancement is more than a mere surrogate for a perjury prosecution. It furthers legitimate sentencing goals relating to the principal crime, including the goals of retribution and incapacitation. It is rational for a sentencing authority to conclude that a defendant who commits a crime and then perjures herself in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process.

Dunnigan, 507 U.S. at 97 (citations omitted).

For the obstruction enhancement to function in this intermediate role and serve the purposes outlined by the Court, the district courts must be afforded adequate discretion in their fact-finding capacity. See Dunnigan, 507 U.S. at 95

7

(treating the basis for obstruction of justice as an issue of fact left to the sentencing judge). District courts hold an especial advantage in fact finding where the sentencing enhancement is based upon testimony or trial proceedings that they have personally observed. See Gall v. United States, 552 U.S. 38, 51-52 (2007); United States v. Bumpers, 705 F.3d 168, 173-74 (4th Cir. 2013). Of course, the advantages that district courts enjoy in their fact-finding capacities impose the concomitant obligation to actually find the facts necessary for meaningful appellate review. Where the enhancement for obstruction of justice is based on a defendant's perjurious testimony, trial court findings should encompass "the factual predicates" for perjury, namely that the defendant "(1) gave false testimony; (2) concerning a material matter; (3) with willful intent to deceive." Perez, 661 F.3d at 192 (quoting United States v. Jones, 308 F.3d 425, 428 n. 2 (4th Cir. 2002)).

Issues of law do often arise in sentencing, and the standard of review for such issues is obviously de novo. But to routinely transform the fact finding and sentencing discretion at the heart of a sentencing enhancement into broad matters of law risks adopting an aerial perspective in circumstances where the ground level view may prove the more valuable. As the Supreme Court noted in Miller v. Fenton, "the fact/law distinction at times has turned on a determination that, as a

8

matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question," and close calls should be resolved "in favor of extending deference to the trial court[s]" where they hold the institutional advantage. 474 U.S. 104, 113-15 (1985).

B.

In this case, the district court did not make an explicit finding that Andrews procured his alibi witnesses' false testimony, a finding that would have been necessary to support each element of perjury. What it did do, however, was rest the enhancement upon the very essence of § 3C1.1 -- the willful obstruction of justice. As we noted, the enhancement can rest on this broader ground.

Under the facts and circumstances here, we can find no clear error in the district court's imposition of the enhancement. As recounted above, the court below found overwhelming evidence that placed Andrews at the scene of the crime in Kannapolis. Of course, courts should not assume that any defendant who attempts to rebut substantial adverse evidence is a candidate for the obstruction enhancement. But in this case, the extensive evidence against Andrews served to fortify the district court's firm conviction that the alibi testimony from Andrews' girlfriend and her mother placing him in Charlotte

9

-- the lynchpin of Andrews' defense -- could only have been patently false. J.A. 38-41.

Nor can there be any doubt that Andrews was aware well in advance that his alibi witnesses were planning to present false testimony. That testimony was repeatedly highlighted in the notice of alibi, in the trial brief, and in counsel's opening statement. Even if his attorney had somehow kept him in the dark, which is hard to imagine, Andrews also filed a pro se motion accusing the prosecution of intimidating his witnesses, including one alibi witness, and blocking them from testifying. He presumably knew the substance of the testimony that his motion sought to protect. Finally, as the district court noted, the alibi witnesses "testified one after the other." J.A. 39. In the highly unlikely event that the first alibi witness surprised Andrews, the second certainly did not. All of the above convinced the district court that the defendant was intimately connected with an effort to present the jury with a whopping lie as to his whereabouts on the night of the robbery, or as the trial court described it, an elaborate deception for which there was no innocent explanation.

It is true, of course, that Andrews did not take the stand and personally perjure himself. But the district court's finding that Andrews knowingly presented and likely actively orchestrated the presentation of false testimony was not only

10

supported by abundant evidence, but also fell squarely within the conduct for which the defendant is expressly held responsible, namely "conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.1, cmt. n. 9. Imposition of the obstruction enhancement was therefore well within the trial court's discretion.

## III.

### A.

In addition to contesting the application of § 3C1.1 on its face, the defendant suggests that the imposition of the enhancement penalized him for exercising his Fifth Amendment right to remain silent, which is explicitly forbidden by the Guidelines. U.S.S.G. § 3C1.1, cmt. n. 2. Andrews suffered no such penalty. The fact that the dynamics of trial may present a defendant with difficult tactical choices has not been held to infringe that defendant's right to remain silent. See Dunnigan, 507 U.S. at 96; United States v. Butler, 211 F.3d 826, 832-33 (4th Cir. 2000). For instance, the prosecution does not violate the Fifth Amendment whenever damaging evidence exerts pressure on a defendant to take the stand and offer a rebuttal. E.g., United States v. Zembke, 457 F.2d 110, 115 (7th Cir. 1972). If adverse trial testimony from prosecution witnesses does not infringe the right to remain silent, then the knowing

11

presentation of false testimony from defense witnesses can hardly be held to do so.  That does not mean a defendant has waived his right to remain silent. What it does mean, however, is that a defendant who has countenanced the perjured testimony of his own witnesses faces separate punishment for doing so without infringement of his Fifth Amendment rights.

In addition to the right to remain silent, the obstruction enhancement leaves intact the defendant's right to present a vigorous defense. The right to offer testimony and to call witnesses on one's own behalf is fundamental to our system of criminal justice. See Nix v. Whiteside, 475 U.S. 157, 164 (1986); Washington v. Texas, 388 U.S. 14, 18-19 (1967). But that right has never been thought to include the right to present false testimony. Dunnigan, 507 U.S. at 96 (citations omitted). As the Supreme Court put it, "Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely.*" Nix, 475 U.S. at 173.

Nor has there been any violation of defendant's right to counsel. Andrews was represented by counsel throughout these proceedings, and Andrews does not contend that the district court sought to probe the content of counsel's communications with his client. There was further no impediment to such communication. That the district court drew inferences or

12

proceeded circumstantially to conclude that Andrews well knew his witnesses were attempting to deceive the court and jury is not tantamount to a Sixth Amendment violation. It cannot be the case that the imposition of a § 3C1.1 obstuction enhancement for what happened here transgressed defendant's constitutional rights. Finding such a violation in these circumstances would go some distance to nullifying the enhancement altogether.

B.

All this is not to deny a certain tension between the exercise of the aforementioned rights and the imposition of the obstruction enhancement. The Guidelines themselves anticipated this tension, and the cautionary language following § 3C1.1 is worth quoting in full:

> 2. Limitations on Applicability of Adjustment.--This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

U.S.S.G. § 3C1.1, cmt. n. 2. The commentary thus makes clear that the defendant must feel free to present a vigorous case without fear of triggering the obstruction enhancement. See

generally Dunnigan, 507 U.S. at 96 (acknowledging § 3C1.1's potential for chilling defendants' rights); Alexandra Natapoff, Speechless: The Silencing of Criminal Defendants, 80 N.Y.U. L. REV. 1449, 1460 (2005) (noting the danger of using obstruction enhancements to deter defendants from testifying). Recollection is by nature an imprecise and uncertain exercise, and faulty recall is far different from deliberate deception. Here, however, the district court properly applied the enhancement to safeguard the integrity of the proceedings before it. It acted to ensure that trial retained its most basic and essential purpose, that of reaching a true and accurate judgment at once fair to the interests of society and the rights of those accused. For the foregoing reasons, its judgment is affirmed.

AFFIRMED

14