**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4126

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERIC LAMONT SMITH,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Malcolm J. Howard, Senior District Judge.  (4:12-cr-00134-H-1)

Argued:  December 9, 2016                              Decided:  March 8, 2017

Before TRAXLER, SHEDD, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James B. Craven III, Durham, North Carolina, for Appellant.  Barbara Dickerson Kocher, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Phillip A. Rubin, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Eric Lamont Smith was indicted on six counts of drugs and weapons charges and convicted by a jury of all counts. The district court sentenced him to a total of 106 months' imprisonment. Smith appeals, raising challenges to his convictions and sentence. We affirm.

I.

A.

The evidence presented at trial established the following. In 2011, Smith lived in New Bern, North Carolina, in an apartment with his girlfriend, Debbie White; their son; and White's other child. The New Bern Police Department began investigating Smith in 2011, after receiving information that he was dealing drugs from his apartment. On September 8, 2011, and on November 4, 2011, an undercover officer went to Smith's apartment complex and made controlled purchases of small amounts of marijuana from Smith.

Early in the morning of November 12, 2011, officers responded to a 911 call reporting a robbery in progress at Smith's apartment. When Officer Benjamin Moyet arrived, he saw Smith walking through the apartment complex from Building 2 to Building 1, where his apartment was located. Smith told Moyet that two men who tried to rob him had run away to the east. Smith brought Moyet to his apartment and showed him a dead man lying in the doorway. No weapon was found on or near the dead man.

Another officer canvassing the area found a black backpack near the stairwell at the back of Building 2. The bag contained loose ammunition, a semi-automatic pistol, and a 38-caliber revolver with distinctive red and white rubber bands wrapped around the handle. The bag also contained relatively small amounts of marijuana (some of it packaged in small plastic bags) and crack cocaine; a prescription bottle with an obliterated label containing individually wrapped pills in multiple colors; a digital scale; and a keychain with a picture of Smith's child.

Smith agreed to go to the police station for questioning. At the police station, Smith told Detective Marquis Morrison-Brown that he slept with a gun under his pillow -- a 38-caliber revolver with red and white rubber bands wrapped around the handle. Smith told Morrison-Brown that he heard a knock at the door around midnight and walked to the door with his gun. He looked through the peephole and recognized the individual outside as a man to whom he had previously sold flavorless cigar wraps. He put his finger on the trigger and opened the door. As the door opened, a dark figure rushed at him, and Smith fired his weapon. After shooting the intruder, Smith heard others running, and he ducked into the hallway and instructed his girlfriend to call the police.

Smith told Morrison-Brown that he ran after the suspects and threw his weapon into the woods behind the apartment complex when he could not find them. After disposing of the gun, Smith had a conversation with some people standing outside

3

Building 2, but he refused to provide their names. When Morrison-Brown asked whether Smith sold drugs, he stated that he was a user but that he never sold drugs.

When Morrison-Brown later learned of the discovery of the black backpack and its contents, she interviewed Smith a second time. She testified that Smith was happy when he first learned that the gun had been found, but that when she told him it was found in the backpack, "he stumbled" and became "hesitant." J.A. 215. Smith told the detective that a person named Dominique must have gone into the woods and found the gun, then placed it in a bag with his own drugs. When Morrison-Brown told Smith that the keychain with his child's picture had been found in the bag, Smith "started to stammer" and explained that he must have dropped the keys when he threw the firearm. J.A. 219.

During the same interview, Smith told Morrison-Brown that he was unemployed, but he occasionally worked for a friend doing lawn care. When asked why he had been the target of two home invasions, he explained that he sold flavorless cigar wraps and bootleg CDs and DVDs.

A warrant-based search of Smith's residence later revealed knotted plastic baggies typically used to hold drugs, a spoon with cocaine residue, a rifle, and rolled cigarettes containing marijuana and cocaine base. Investigators did not find any cigar wraps or bootleg CDs or DVDs in the apartment, and a search of the woods revealed no weapon.

Over Smith's objection and after giving a limiting instruction to the jury, the district court permitted the government to call four witnesses to testify about Smith's prior drug-related activities at the apartment complex. *See* Fed. R. Evid. 404(b). A

4

police officer testified that in 2005, he arrested Smith in his apartment for possession of marijuana with intent to sell and deliver. According to the officer, Smith admitted at the time that he was a "small-time dealer, dealing in nickel and dime stuff." J.A. 294. Smith's next-door neighbor testified that she saw "a lot of foot traffic" in and out of Smith's apartment, including people of "all kinds, black, white, old, young," from morning until evening. J.A. 302. Another witness testified that he had lived in Smith's apartment complex several years earlier and that during that period he bought small quantities of marijuana from Smith several times a week and had bought crack cocaine two or three times. Finally, a maintenance worker at Smith's apartment complex testified that he was in Smith's apartment in the spring of 2011 and saw several pills on the coffee table next to a large roll of cash wrapped with a rubber band. Smith was on the telephone, with the pills in front of him, and the witness overheard him say, "I have about 4 or 5 left; if you want them, you better come get them." J.A. 338.

Smith took the stand in his own defense. At the beginning of his testimony, Smith engaged in the following colloquy with defense counsel:

Q: And you have from time to time in the past dealt nickel/dime amounts of marijuana; is that correct?

A: No, sir.

Q: You never have?

A: No, sir.

Q: Okay. Did you on September 8 or November 4, 2011, engage in small marijuana deals?

A: No, sir.

5

J.A. 419-20. Smith testified that he had heard the other witnesses' testimony regarding their controlled purchases, but he repeatedly denied that these sales took place.

As to the events surrounding the attempted robbery and shooting, Smith denied packing the black backpack or putting it in the stairwell of Building 2. He testified that he ran out of the apartment after the shooting to reduce the chance that any retaliation would harm his family. He saw two men in front of Building 2 and told the men he had just been robbed. He recognized one of the men as Dominique Carter, but explained that it was only later that "it dawned on [him] that [the other individual] could have been the guy who just left [his] crib." J.A. 431. Smith testified that he "placed" the gun just inside the woods, J.A. 432, and he speculated that the other individual had retrieved the gun and brought it to Carter, who put his own drugs and Smith's gun in the backpack. Smith did not know how his son's picture ended up on a keychain in that bag, but he testified that someone else who had a picture of his son must have put it there. Smith admitted that he possessed the handgun and rifle, despite knowing he could not have them as a convicted felon.

## B.

Smith faced no charges related to the shooting. Instead, the charges against Smith stemmed from the controlled purchases on September 8, 2011, and November 4, 2011, and the drugs and firearm found in the black backpack. As previously noted, the jury found Smith guilty of all six counts charged in the indictment.

At sentencing, the district court concluded that Smith perjured himself at trial by denying the controlled buys, and the court therefore imposed a two-level enhancement for obstruction of justice. *See* U.S.S.G. § 3C1.1. The court sentenced Smith to 46 months' imprisonment on Counts 1 through 5, to be served concurrently, and 60 months' imprisonment on Count 6, to be served consecutively to the remaining counts, for a total sentence of 106 months' imprisonment.

Smith appeals. He contends that the district court erred by permitting the government to present the testimony of the Rule 404(b) witnesses, and that the court erred in imposing the obstruction-of-justice enhancement.

## II.

Rule 404(b) generally prohibits the introduction of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character" and action in conformity with that character on a particular occasion. Fed. R. Evid. 404(b)(1). Nonetheless, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2). "Rule 404(b) is a rule of inclusion, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Byers*, 649 F.3d 197, 206 (4th Cir. 2011) (internal quotation marks omitted). To be admissible under Rule 404(b), the evidence of prior bad acts "(i) must be relevant to an issue other than character, such as identity or motive; (ii) must be necessary to prove an element of the crime charged or to prove context; and (iii) must be reliable." *Id.*

(citations, internal quotation marks and alteration omitted). The district court is vested with discretion regarding the admission of Rule 404(b) evidence, and we will affirm unless "the district court judge acted arbitrarily or irrationally." *United States v. Cabrera-Beltran*, 660 F.3d 742, 755 (4th Cir. 2011) (internal quotation marks omitted).

"In drug cases, evidence of a defendant's prior, similar drug transactions is generally admissible under Rule 404(b) as evidence of the defendant's knowledge and intent." *Id.* However, "[t]he fact that a defendant may have been involved in drug activity in the past does not in and of itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct." *United States v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010).

On appeal, Smith contends that the testimony of one of the Rule 404(b) witnesses should have been excluded because the witness was not included on the list of witnesses filed by the government before trial. Smith also contends that much of the Rule 404(b) evidence was improperly admitted because it involved conduct occurring years before the incidents at issue in this case. *See, e.g., United States v. Hernandez*, 975 F.2d 1035, 1039 (4th Cir. 1992) ("Evidence to show intent is not admissible when the unrelated bad act is tenuous and remote in time from the charges in the indictment." (internal quotation marks omitted)).

As to the omitted witness, we note that the government listed the witness and described the general substance of his expected testimony in the government's pre-trial notice of its intent to offer Rule 404(b) evidence. Moreover, the witness admitted his

8

criminal history at trial. Under these circumstances, Smith cannot show that he suffered any prejudice from the omission of the witness's name from the government's pretrial list. *Cf. United States v. Fulks*, 454 F.3d 410, 424 (4th Cir. 2006) ("[I]f a defendant can demonstrate that permitting an after-discovered witness to testify would cause him 'actual prejudice' in the form of unfair surprise, a trial court should first consider whether a brief adjournment to allow the defendant to meet the witness's testimony would eliminate the prejudice caused by the surprise.").

As to Smith's more general challenge to the admission of the Rule 404(b) evidence, we find no reversible error. Even if we were to assume that the evidence was too remote or otherwise inadmissible, any error would be harmless in light of the overwhelming evidence against Smith. *See Johnson,* 617 F.3d at 292 ("[I]n order to find a district court's error harmless, we need only be able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." (internal quotation marks omitted)).

## III.

We turn now to Smith's challenges to the two-level obstruction-of-justice enhancement applied by the district court at sentencing.

Smith first seems to contend that the enhancement was procedurally improper. The original presentence report ("PSR") recommended the enhancement based on statements Smith made to law enforcement during the investigation. When Smith

9

objected, the probation officer issued a revised PSR that recommended application of the obstruction enhancement based on Smith's trial testimony. While Smith describes this process as a "bait and switch," Brief of Appellant at 10, we see nothing improper, as Smith had adequate time to respond to the revised PSR before sentencing.

As to Smith's substantive challenge to the enhancement, we find no reversible error. Committing perjury during trial qualifies as obstruction of justice for sentencing purposes. *See* U.S.S.G. § 3C1.1 cmt. n.4(B). For purposes of the sentencing enhancement, a defendant obstructs justice if he provides "false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *accord United States v. Perez*, 661 F.3d 189, 192 (4th Cir. 2011).

In this case, the district court based the enhancement on Smith's denial at trial that he sold marijuana during the controlled buys on September 8, 2011, and November 4, 2011. The district court explained that it made a note at the time of trial that Smith's testimony "appears to be untruthful," and the court specifically found by a preponderance of the evidence that Smith's testimony was "perjurious" and concerned a "material fact." J.A. 533, 536. While the district court's factual findings were somewhat abbreviated, we believe the court's statements, when considered together and in context, sufficiently "encompass[] all of the factual predicates for a finding of perjury." *Dunnigan*, 507 U.S. at 95; *cf. Perez*, 661 F.3d at 193 (explaining that "a mere statement that the defendant committed perjury is insufficient" to support an obstruction-of-justice enhancement).

10

Because the district court's findings are not clearly erroneous, we affirm the court's decision to apply the two-level enhancement under U.S.S.G. § 3C1.1. *See United States v. Andrews*, 808 F.3d 964, 969 (4th Cir. 2015) (reviewing obstruction-of-justice enhancement for clear error).

IV.

Accordingly, for the foregoing reasons, we hereby affirm Smith's conviction and sentence.

AFFIRMED