**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4162

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JERRY JABBARI RHODES, a/k/a Viking, a/k/a JJ,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., Senior District Judge. (3:14-cr-00607-JFA-13)

Argued: March 22, 2018                                    Decided: June 7, 2018

Before WILKINSON and TRAXLER, Circuit Judges, and Leonie M. BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Joshua Snow Kendrick, KENDRICK & LEONARD, P.C., Greenville, South Carolina, for Appellant. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Kenneth A. Blanco, Acting Assistant Attorney General, Trevor N. McFadden, Deputy Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Beth Drake, United States Attorney, J.D. Rowell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jerry Jabbari Rhodes was convicted by a jury of conspiracy to distribute powder and crack cocaine. After concluding that Rhodes qualified as a career offender, the district court imposed a sentence of 244 months. Rhodes appeals, raising challenges to his conviction and sentence. We find no reversible error in the trial proceedings, but we conclude that the district court erred in sentencing Rhodes as a career offender. We therefore affirm his conviction but vacate his sentence and remand for resentencing.

## I.

We begin with Rhodes' challenges to his conviction.

## A.

While monitoring the telephone calls of Robert Jamison, the FBI learned that Jamison was selling cocaine to Rhodes for distribution in the area around Columbia, South Carolina. The FBI arrested Jamison in November 2013 and arrested Rhodes in 2015. In 2016, Rhodes and Jamison were both in custody at the Lexington County Detention Center. Rhodes approached Jamison and tried to convince Jamison not to testify against him. In one of his conversations with Jamison, Rhodes said that his attorney had encouraged him to persuade Jamison not to testify.[*] Portions of the conversations between Jamison and Rhodes were overheard by Keith Randolph, an inmate who had had some involvement in Jamison's drug-distribution activities.

---

[*] Rhodes' appellate attorney is not the attorney against whom Rhodes made this allegation.

3

Because the government intended to call Jamison and Randolph as trial witnesses, the government informed the district court before trial that counsel for Rhodes had a potential conflict of interest, given Rhodes' statement that counsel had encouraged his conversations with Jamison. Rhodes argued that his attorney should not be disqualified and that his statements to Jamison should be excluded as unfairly prejudicial. After conducting a hearing and an *ex parte* examination of Rhodes and his attorney, the district court concluded that the statements were admissible and that the resulting conflict required the court to discharge Rhodes' attorney and appoint new counsel. During Jamison's trial testimony, the court informed the jury that the attorney then representing Rhodes had not been his attorney at the time of Rhodes' conversations with Jamison.

Rhodes argues on appeal that the district court erred by admitting the jailhouse statements. Rhodes acknowledges that the statements were relevant, but he contends that the references to Rhodes' prior attorney made the statements unfairly prejudicial and "created severe danger the jury would convict Rhodes not for dealing drugs, but for his statements in the jail." Brief of Appellant at 22. We disagree.

"We review a trial court's rulings on the admissibility of evidence for abuse of discretion, and we will only overturn an evidentiary ruling that is arbitrary and irrational." *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011) (internal quotation marks omitted). "To that end, we look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Id.* (internal quotation marks omitted).

4

Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. For purposes of Rule 403, evidence is unfairly prejudicial "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (internal quotation marks omitted). In this case, we cannot say the district court's decision to admit the evidence was irrational. Evidence of a defendant's attempt to tamper with the testimony of a witness is clearly relevant and probative of the defendant's consciousness of guilt, and courts have generally concluded that such evidence is not unfairly prejudicial. *See, e.g.*, *United States v. Poulsen*, 655 F.3d 492, 509-10 (6th Cir. 2011); *cf. United States v. Higgs*, 353 F.3d 281, 323 (4th Cir. 2003) (concluding that evidence that defendant instructed witnesses to lie was not unfairly prejudicial in capital sentencing proceeding). While the evidence here also suggested the involvement of an attorney in the attempted tampering, we do not believe that additional fact pushes the evidence over the line from merely prejudicial (which is the case for all evidence that is probative of guilt) to unfairly prejudicial, particularly since the district court informed the jury that the attorney representing Rhodes at trial had no involvement in the incident.

## B.

Rhodes also contends that the evidence was insufficient to support the jury's guilty verdict. The jury's verdict in a criminal case must be upheld on appeal "if, viewing the

evidence in the light most favorable to the government, [the verdict] is supported by substantial evidence, which is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (internal quotation marks omitted). "A defendant who brings a sufficiency challenge bears a heavy burden, as appellate reversal on grounds of insufficient evidence is confined to cases where the prosecution's failure is clear." *Id.* (internal quotation marks omitted).

To convict on a drug-distribution conspiracy charge, "the government must demonstrate beyond a reasonable doubt (1) an agreement between two or more persons to engage in conduct that violates a federal drug law, (2) the defendant's knowledge of the conspiracy, and (3) the defendant's knowing and voluntary participation in the conspiracy." *United States v. Gomez–Jimenez*, 750 F.3d 370, 378 (4th Cir. 2014). The government's evidence in this case was sufficient to carry its burden.

The evidence presented at trial established that Jamison supplied Rhodes with large quantities of crack and powder cocaine over an extended period of time. According to Jamison, Rhodes at first bought crack cocaine from him, but Jamison later began "fronting" powder cocaine to Rhodes. Jamison testified that "in order to sell my product faster, I asked [Rhodes] would it be all right if I would front him the cocaine and he could cook his own crack and sell the excess of the cocaine for me and he agreed." J.A. 212. The government also played several recorded telephone conversations for the jury, including two conversations where Rhodes agreed to act as a middleman for Jamison in a deal between Jamison and one of Rhodes' marijuana suppliers. While Rhodes contends

6

that he and Jamison had only a buyer-seller relationship that would not support a conspiracy conviction, we believe the evidence described above is more than sufficient to permit the jury to find Rhodes guilty of conspiracy. *See United States v. Garcia-Lagunas*, 835 F.3d 479, 490 (4th Cir. 2016) ("While a mere buyer-seller relationship is insufficient to support a conspiracy conviction, evidence that such a buyer-seller relationship is continuing and includes repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs." (alteration and internal quotation marks omitted)).

## II.

We turn now to Rhodes' challenge to his sentence. Rhodes contends that the district court erred by sentencing him as a career offender under the Sentencing Guidelines because his prior South Carolina conviction for distribution of a controlled substance in proximity of a school does not qualify as a "controlled substance offense" as defined by the Guidelines. Although Rhodes generally objected to the career-offender designation, the arguments he made below do not encompass the argument asserted on appeal and did not give the district court the opportunity to consider the particular issue we address. We therefore review the issue for plain error only.

A defendant is a career offender subject to an increased sentence under the Sentencing Guidelines if he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). The Guidelines define a "controlled substance offense" as:

7

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Thus, under the Guidelines, possession with intent to distribute counts as a controlled substance offense, but simple possession does not. *See United States v. Neal*, 27 F.3d 90, 92 (4th Cir. 1994) (per curiam) ("[S]imple possession of drugs is excluded from the category 'controlled substance offense.'").

To determine whether Rhodes' conviction qualifies as a controlled substance offense, we apply the categorical approach, which focuses on the elements of the prior offense, not the conduct underlying the conviction. "For a prior conviction to qualify as a Guideline predicate offense, the elements of the prior offense must correspond in substance to the elements of the enumerated offense." *United States v. Dozier,* 848 F.3d 180, 183 (4th Cir. 2017) (alterations and internal quotation marks omitted). In cases involving "divisible" statutes -- statutes that "list elements in the alternative, and thereby define multiple crimes," *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) -- we apply "the modified categorical approach," which permits us to consult a limited universe of documents to determine which of the alternate forms of the offense was the basis of the defendant's conviction, *id.*

At the time of Rhodes' offense, the South Carolina statute at issue here provided that:

> It is a separate criminal offense for a person to distribute, sell, purchase, manufacture, or to unlawfully possess with intent to distribute, a controlled

substance while in, on, or within a one-half mile radius of the grounds of a public or private elementary, middle, or secondary school; a public playground or park; a public vocational or trade school or technical educational center; or a public or private college or university.

S.C. Code Ann. § 44-53-445(A) (2003). Because the statute applies to the mere *purchase* of drugs, it criminalizes simple possession and thus is not categorically a controlled substance offense, a point conceded by the government. *See* Brief of Respondent at 24 ("Section 44-53-445 does not categorically meet the definition of a 'controlled substance offense'. . . because it includes a purchase offense . . . .").

The government, however, contends that the statute is divisible and that the record establishes that Rhodes was convicted of the distribution form of the proximity offense, which qualifies as a controlled substance offense. We will assume for purposes of this appeal that the proximity statute is divisible. But even with that assumption, we cannot agree with the government that Rhodes was properly sentenced as a career offender.

When applying the modified categorical approach, we may look only to a limited class of documents to determine if Rhodes was convicted of a version of the offense that qualifies as a controlled-substance offense. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). The *Shepard*-approved documents are all drawn from the judicial record of conviction and include the charging document and jury instructions, or, in cases involving a guilty plea, the terms of any plea agreement or the transcript of a colloquy establishing the factual basis for the plea. *See Mathis*, 136 S. Ct. at 2249; *Shepard*, 544 U.S. at 26. At sentencing, the government did not present the indictment or other documents relating to the proximity conviction, but relied on the information set out in

9

the presence report. *See United States v. Thompson*, 421 F.3d 278, 285 (4th Cir. 2005) (district court may rely on PSR's description of prior convictions if PSR was "deriv[ed] from *Shepard*-approved sources" and the defendant does not object).

The PSR quotes the indictment as charging that Rhodes did knowingly and unlawfully

> sell, distribute, cultivate, manufacture, deliver, or bring into this state, or did provide financial assistance or otherwise aid, abet, attempt, or conspire to sell, manufacture, cultivate, deliver, or bring into this state, possess, with intent to distribute or was *knowingly and intentionally in actual or constructive possession of or did knowingly and intentionally attempt to become in actual or constructive possession of crack cocaine*, a controlled substance, while in, on, or within a one half-mile radius

of a school. J.A. 462 (emphasis added). Because the indictment alleges multiple acts, including mere possession, it does not show which proximity offense Rhodes was convicted of committing. Although the PSR refers to an affidavit that indicates Rhodes was convicted of distributing drugs in proximity of a school, there is no indication that the affidavit was expressly incorporated into the indictment. The affidavit therefore is not among the universe of *Shepard*-approved documents that may be consulted when applying the modified categorical approach. *See Shepard*, 544 U.S. at 26; *United States v. Donnell*, 661 F.3d 890, 894 (4th Cir. 2011) ("To appropriately consider information in an external document, such as the statement of probable cause at issue here, the document containing the information must be expressly incorporated into the charging document.").

Because neither the indictment nor any *Shepard*-approved document establishes that Rhodes was actually convicted of an offense that qualifies as an controlled substance offense under the Guidelines, the government failed to carry its burden of showing that

the prior conviction qualified as a controlled substance offense. *See United States v. Andrews*, 808 F.3d 964, 968 (4th Cir. 2015) ("The government bears the burden of proving the facts supporting [a Guidelines sentencing] enhancement by a preponderance of the evidence."); *United States v. McDowell*, 745 F.3d 115, 120 (4th Cir. 2014) ("The Government bears the burden of proving by a preponderance of the evidence that a defendant committed a predicate violent felony—the same standard that applies to any other sentencing factor."). The district court therefore erred in sentencing Rhodes as a career offender.

We believe that error requires correction even under plain-error review. *See United States v. Robinson*, 627 F.3d 941, 954 (4th Cir. 2010) (explaining that obtaining relief under plain-error review requires defendant to establish that "the district court erred, that the error was plain, and that it affected his substantial rights" (internal quotation marks and alterations omitted)). Our cases make clear the circumstances under which non-judicial documents such as affidavits or statements of probable cause can be considered under the modified categorical approach, and the error caused Rhodes to be sentenced under a higher Guidelines sentencing range. Under these circumstances, we believe it proper to exercise our discretion and correct the plain error. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016) ("In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome. And, again in most cases, that will suffice for relief if the other requirements of [plain-error review] are met.").

11

## III.

Accordingly, for the foregoing reasons, we hereby affirm Rhodes' conviction, but we vacate his sentence and remand for resentencing without the career-offender enhancement. On remand, Rhodes is free to re-assert any sentencing objections that were rendered moot by the career-offender ruling and therefore not previously ruled on by the district court.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*